Ervin Allen BIGLEY, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 939–92.

Court of Criminal Appeals of Texas,
En Banc.

June 16, 1993.

Rehearing Denied Nov. 17, 1993.

Stephen M. Orr, Austin, for appellant.

Charles D. Penick, Dist. Atty., and John M. Hawkins, Asst. Dist. Atty., Bastrop, Robert Huttash, State's Atty., and Matthew W. Paul, Asst. State's Atty., Austin, for the State.

### OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

A jury convicted appellant of possession of 400 grams or more of methamphetamine and assessed punishment, enhanced by proof of one prior felony conviction, at ninety-nine years confinement and a $250,000 fine. On appeal, appellant argued that the evidence was insufficient to prove that the amount of the methamphetamine he possessed weighed at least 400 grams. The court of appeals agreed. *Bigley v. State,* 831 S.W.2d 409 (Tex.App.—Austin 1992) (opinion on rehearing).

In reliance on this Court's decisions in *McGlothlin, Reeves,* and *Engelking,*[1] the court of appeals held that the State had failed to prove that the substances with which the methamphetamine was mixed had been added with the intent to increase the bulk of the final product. Therefore, the court of appeals held that the State had failed to prove that the controlled substance, including adulterants and dilutants, weighed

---

1. *McGlothlin v. State,* 749 S.W.2d 856 (Tex.Cr. App.1988); *Reeves v. State,* 806 S.W.2d 540 (Tex. Cr.App.1990); *Engelking v. State,* 750 S.W.2d 213 (Tex.Cr.App.1988).

at least 400 grams. *Bigley,* 831 S.W.2d at 412.

The court of appeals also held, however, that there was ample evidence of appellant's guilt of the lesser-included offense of possession of 28 grams or more but less than 400 grams of methamphetamine because the State proved that appellant possessed 388.76 grams of pure methamphetamine. Since the jury had been instructed on the lesser-included offense of possession of 28 grams or more of methamphetamine, the court of appeals held that by finding appellant guilty of possession of at least 400 grams of methamphetamine, the jury had also necessarily found that appellant possessed at least 28 grams of methamphetamine. The court of appeals relied on Texas Rule of Appellate Procedure 80 [2] (hereinafter "rule 80") to reform the judgment to reflect a conviction for possession of 28 grams or more, but less than 400 grams of methamphetamine. The judgment of conviction, as reformed, was affirmed as to the adjudication of guilt, but remanded for a new trial as to punishment.

■ We granted appellant's petition for discretionary review to determine whether the court of appeals had the authority to reform the judgment to reflect a conviction for the lesser-included offense. Appellant asserts that the court of appeals' application of Rule 80 is in conflict with this Court's construction of the rule in *Urbano v. State,* 837 S.W.2d 114 (Tex.Cr.App.1992).

While *Urbano* did involve Rule 80, that decision is not dispositive of the issue confronting us in this case. *Urbano* was a capital murder prosecution in which this Court found the evidence insufficient to prove the aggravating element of remuneration. 837 S.W.2d at 117. The State sought to have this Court reform the judgment of conviction to reflect a conviction for the lesser-included offense of murder because the evidence was sufficient to prove the offense of murder. This Court declined the State's invitation upon observing that *"this Court* does not have the authority to reform a conviction of a greater felony found to be based on insufficient evidence to [a] lesser felony, which the evidence will support." *Id.,* citing *Stephens v. State,* 806 S.W.2d 812, 818, fn. 8 (Tex.Cr. App.1990) (Emphasis added).

■ The fact that we have interpreted Rule 80 in such a manner as to preclude this Court from having the power to reform judgments, however, *does not mean that an intermediate court of appeals is also denied the power to reform judgments.* Indeed, Rule 80 specifically states that "[t]he court of appeals may: ... (2) modify the judgment of the court below by correcting *or reforming* it, ..." Tex.R.App.Proc. 80 (Emphasis added). Appellant, citing *Asberry v. State,* 813 S.W.2d 526 (Tex.App.—Dallas 1991, pet. ref'd), argues that "errors of a clerical nature may be corrected, [but] reformation involving the judicial reasoning of the district court is not authorized." Nothing in the text of Rule 80, however, so limits the power of the court of appeals to reform a judgment of the court below. Therefore, we refuse to limit the authority of the courts of appeals to reform judgments to only those situations involving mistakes of a clerical nature.

In this case, the court of appeals reformed the judgment to reflect that appellant had been convicted of the lesser included offense of possession of an amount of methamphetamine greater than 28 grams and less than 400 grams. Sam Bivone's testimony in support of the State's case established that the unadulterated methamphetamine possessed by appellant weighed 388.76 grams. Since

---

2. In relevant part, Texas Rule of Appellate Procedure 80 reads:

**Rule 80. Judgment of Court of Appeals**

  ❖   ❖   ❖   · ❖   ❖   ❖

(b) **Types of Judgment.** The court of appeals may: ... (2) modify the judgment of the court below by correcting or reforming it, ...

  ❖   ❖   ❖   ❖   ❖   ❖

(c) **Other Orders.** In addition, the court of appeals may make any other appropriate order, as the law and nature of the case may require.

we have concluded that Rule 80 empowers the courts of appeals to reform judgments, we find that the court of appeals acted properly in reforming the judgment to reflect that appellant was guilty of possessing more than 28 grams of methamphetamine based on Bivone's testimony.

The judgment of the court of appeals is AFFIRMED.

BAIRD, Judge, concurring.

Based upon the controlling authority from this Court, the Court of Appeals correctly held the evidence was insufficient to support a finding that appellant possessed methamphetamine in an aggregate weight of over 400 grams. *Bigley v. State*, 831 S.W.2d 409, 412 (Tex.App.—Austin 1992). And, the Court of Appeals correctly held that, under Tex.R.App.P. 80(b), it had the authority to reform the judgment to reflect a conviction for possession of more than twenty-eight but less than 400 grams of methamphetamine. *Id.* at 415. However, I am writing separately to express my belief that the Court of Appeals was authorized to reform the judgment because the jury had been instructed on the lesser offense.

### I.

As the Court of Appeals noted, in *Garrett v. State*, 749 S.W.2d 784 (Tex.Cr.App.1986), we held:

... neither this Court nor the court of appeals is authorized to reform the judgment and sentence to reflect conviction for a lesser included offense under [Tex.Code Crim.Proc.Ann. art. 44.24(b) ], since "reformation of judgment and sentence may be done only to cause those instruments to reflect the true finding of the fact finder when such a finding is reflected in the verdict or, in a bench trial, the pronouncement of the court's finding." *Milczanowski v. State*, 645 S.W.2d 445, 447 (Tex.Cr. App.1983). All that remains upon remand is to enter judgment of acquittal. But for this essentially ministerial act, there is no lack of finality in the judgment, and hence no basis to apply continuing jurisdiction.

*Id.* 749 S.W.2d at 793–794. *See Bigley*, 831 S.W.2d at 415, n. 2.

The Court of Appeals, however, continued and noted that art. 44.24(b) had been repealed and replaced by Rule 80 which contains a broader grant of authority to the courts of appeals. *Id.* Rule 80(b) provides:

**Types of Judgment.** The court of appeals *may:* (1) affirm the judgment of the court below, (2) *modify* the judgment of the court below by correcting or *reforming* it, (3) reverse the judgment of the court below and dismiss the case *or render the judgment or decree that the court below should have rendered,* or (4) reverse the judgment of the court below and remand the case for further proceedings.[1]

### II.

In *Stephens v. State*, 683 S.W.2d 23 (Tex. App.—Dallas 1984), the defendant was convicted of aggravated rape. However, the Court of Appeals found the evidence was insufficient to sustain the conviction and ordered an acquittal. We affirmed that judgment. *Stephens v. State*, 717 S.W.2d 338 (Tex.Cr.App.1986). The State re-indicted Stephens for rape and Stephens filed a pretrial application for a writ of habeas corpus claiming that the prosecution was barred by the Double Jeopardy Clause. We found the subsequent prosecution was jeopardy barred. In so finding we specifically noted that the State had, at Stephens' first trial, chosen *not* to request an instruction on the lesser included offense of rape. *Stephens v. State*, 806 S.W.2d 812, 817–818 (Tex.Cr.App.1991). By failing to pursue the lesser included offense of rape, at the first trial, jeopardy had attached to that offense and the State was forever barred from prosecuting Stephens for that offense. *Id.*

In *Granger v. State*, 605 S.W.2d 602 (Tex. Cr.App.1980), the defendant was originally convicted of capital murder. However, we found the evidence was insufficient to prove the aggravating element of remuneration and ordered an acquittal. Granger was re-indicted for murder and filed a pretrial application for writ of habeas corpus contending the

1. Unless otherwise indicated, all emphasis is supplied.

prosecution was barred by the Double Jeopardy Clause. However, at Granger's original trial, the jury had been charged on the lesser offense of murder. We held this instruction distinguished Granger's jeopardy claim from that in *Stephens* and held Granger's subsequent prosecution for murder was *not* jeopardy barred. *Granger v. State*, 850 S.W.2d 513, 524 (Tex.Cr.App.1993).

### III.

In the instant case, as the majority notes, the jury was instructed on the lesser offense of possession of more than twenty-eight but less than 400 grams of methamphetamine. Consequently, the reformation by the Court of Appeals is not jeopardy barred. However, had there been no such instruction on the lesser included offense, the Court of Appeals would *not* have been authorized to reform the judgment under Rule 80(b). Had there been no such instruction, the appropriate action would have been for the Court of

Appeals to order an acquittal. In other words, Rule 80(b) does not give the courts of appeals the authority to reform a judgment to that of a jeopardy barred offense.

With these comments, I join the majority opinion.

CLINTON, Judge, dissenting.

The authority claimed for the disposition of the court of appeals is Tex.R.App.Pro., Rule 80(b). *Bigley v. State*, 831 S.W.2d 409, at 415, n. 2 (Tex.App.—Austin 1992). Today the majority reads the rule literally, as if it were newly granted authority *sans* any judicial interpretive gloss on its intendment and application.

Rule 80(b) and (c) derive directly from former article 44.24(b), V.A.C.C.P., extant when the Advisory Committee on Appellate Rules ("Guittard Committee") transformed the article essentially in style and format—with one major exception.[1] Thus by descent

1. Immediately prior to repeal triggered by this Court and the Supreme Court adopting and promulgating the Rules of Appellate Procedure, article 44.24(b) provided:

   "(b) The *courts of appeals* and Court of Criminal Appeals may affirm the judgment of the court below, or may reverse and remand for a new trial, or may reverse and dismiss the case, or may reform and correct the judgment *or may enter any other appropriate order*, as the law and the nature of the case may require." Acts 1981, 67th Leg., Ch. 291, p. 816, § 133, effective September 1, 1981 (all emphasis here and throughout is mine unless otherwise indicated).

   The "one major exception" alluded to in the text is that the court of appeals may reverse the judgment below and *"render the judgment or decree that the court below should have rendered."* This provision comes directly from former Tex.R.Civ.App. 434, *viz:* "When the judgment or decree of the court below shall be reversed, the court may proceed to render such judgment or decree as the court below should have rendered, except ..." Rule 81(c) iterates this provision with an exception, *viz:* "when necessary to remand to the court below for further proceedings."

   No code of criminal procedure has ever granted nor did the 1981 revised or the original article 44.24(b) include any such authority; further, the latter did not provide "or may enter any other appropriate order." See O.C. article 742; article 869, C.C.P.1879; article 904, C.C.P.1895; article 938, C.C.P.1911; Article 847, C.C.P.1925.

   Just as the Guittard Committee drew from former civil rule 434 to insert appellate authority

to "render judgment," so also the 1981 revisors must have had in mind other provisions of rule 434 relating to certain "orders" when they inserted authority to "enter appropriate orders." The latter now appears in Rule 80 as separate subdivision (c), both mentioning only the court of appeals. Thus that the revisors intended either to apply on direct appeal of a judgment of conviction in a criminal case is most doubtful.

   On direct appeal this Court never had express power to render judgment that the trial court should have rendered, although after *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), in its judgment the Court should and did *direct the trial court to enter a judgment of acquittal for insufficient evidence* as "dictated" by *Burks*, supra, at 18, S.Ct., at 2150, L.Ed.2d, at 14, and *Greene*, supra, at 24–25, S.Ct., at 2154, L.Ed.2d, at 21. See, e.g., *Bryant v. State*, 574 S.W.2d 109, at 112 (Tex.Cr.R.1978) (upon reversal for insufficient evidence, those decisions "dictate that no further prosecution be had in this case"); see also *Ortiz v. State*, 577 S.W.2d 246, at 250 (Tex. Cr.App.1979) (opinion reversing judgment for insufficient evidence "tantamount to an acquittal").

   And in certain appeals in ancillary matters, e.g., article 44.37 directed this Court to "enter such judgment, and make such orders as the law and the nature of the case may require ..." That provision was amended to direct an "appellate court" to do so; it is now Rule 44(c), providing for appeals in habeas corpus and bail proceedings.

from rules of appellate procedure Rule 80(b) and (c) continued whatever power and authority courts of appeals already possessed in making its judgments in *civil cases,* and from repealed article 44.24 it also properly turned over to them the same appellate power and authority to render judgments on direct appeal in *criminal cases* (other than capital with death penalty) previously vested in this Court.

## I

### A

The indictment in this cause alleges in pertinent part that appellant possessed methamphetamine "in an amount by aggregate weight, including any adulterants and dilutants of 400 grams or more." Tr. 2.

The charge authorized the jury in similar terms to convict or acquit appellant for possessing methamphetamine in alternative amounts of "four hundred (400) grams or more, twenty-eight grams or more but less than 400 grams," or "less than twenty-eight grams." Tr. 85. The jury returned a verdict finding appellant guilty of possession of methamphetamine "in an amount by aggregate weight, including any adulterants and dilutants of four hundred (400) grams or more, as charged in the indictment." Tr. 88. The charge on punishment recited the fact that appellant had been found guilty of possessing methamphetamine "in an amount of 400 grams or more, as alleged in the first paragraph of the indictment," Tr. 89; the verdict similarly recited that same fact in like terms. Tr. 92.

The judgment of the trial court declared that the verdict of the jury had been received and entered in the minutes of the court, reciting the verdict in terms substantially tracking the indictment allegations and the jury findings of guilt; further, the judgment "CONSIDERED and ADJUDGED" appellant guilty of the described offense "as charged in the indictment." Tr. 94.

### B

Upon determining there was "no evidence from which to conclude that the methamphetamine ... exceeds 400 grams" and concluding, therefore, that "the evidence in this case is insufficient to support a finding that Bigley possessed methamphetamine in an aggregate weight of over 400 grams," *Bigley,* supra, at 412, the proper remedy from the court of appeals was to reverse the judgment below and remand the cause to the trial court to enter a judgment of acquittal of the offense alleged, charged and found by the verdict of the jury. See, e.g., *McGlothin v. State,* 749 S.W.2d 856, at 861 (Tex.Cr.App.1988); *Engelking v. State,* 727 S.W.2d 694 (Tex.App.—Houston [1st] 1987) (Levy, J., dissenting at 701), reversed and remanded 750 S.W.2d 213, at 216 (Tex.Cr.App.1988).

Contrary to judgments of the Court "dictated" by *Burks v. United States* and *Greene v. Massey* ("*Burks–Greene*"), directing an acquittal for insufficient evidence to support the *verdict* of conviction, see n. 1 *ante,* the court of appeals in effect set aside and vacated the verdict the jury actually returned, and rendered its own "verdict" finding appellant guilty of a lesser included offense, and upon that finding also rendered its own judgment.

Rejecting the view most recently expressed by Judge Campbell in *Stephens v. State,* 806 S.W.2d 812, at 818, n. 8 (Tex.Cr.App.1990), that reviewing courts of this State lack authority to reform a judgment of conviction of a greater felony for insufficient evidence to a lesser felony supportable by the evidence, the court of appeals based its own ability to do so on "Rule 80, which contains a broader grant of authority to the courts of appeals." *Bigley,* supra, at 415, n. 2.

Furthermore, the court of appeals believed that *Jones v. State,* 532 S.W.2d 596, at 601 (Tex.Cr.App.*1976* ), and *Moss v. State,* 574 S.W.2d 542, at 545 (Tex.Cr.App.1978) (opinion on rehearing) "employed the procedure we adopt in this cause," *Bigley v. State,* supra, at 9, n. 2.

## II

### A

In this jurisdiction a constitutional imperative is that in all criminal prosecutions an accused shall have a "speedy public trial by

an impartial *jury*" unless waived in proper cases with consent and approval of the trial court and the attorney representing the State. Article I, § 10, Constitution of the State of Texas; Articles 1.05 and 1.13, V.A.C.C.P.; Special Commentary following the latter.

The right to trial by jury is a guarantee that the decisional verdict on guilt or "innocence" of the offense charged will be made according to due process and due course of law by twelve fellow citizens, rather than by a judge alone—unless, of course, the judge directs the jury to acquit for insufficient evidence. "A 'verdict' is a written declaration by a jury of its *decision of the issue submitted* to it in the case." Article 37.01, V.A.C.C.P. The verdict must be general— either guilty or not guilty of the offense charged or of a lesser included offense contemplated by the charging instrument and properly submitted to the jury by the trial court. Article 37.07, § 1(a) and (b); Articles 37.08 and 37.09.

A verdict of "guilty" "as charged in the indictment" or, where submitted, "guilty" of a "lesser included offense," followed by rendition of proper judgment on the verdict constitutes "conviction." *Baker v. State,* 70 Tex.Cr.R. 618, 158 S.W. 998, at 1000 (1913); *Snodgrass v. State,* 67 Tex.Cr.R. 615, 150 S.W. 162, at 172–174 (1912). "On each verdict of acquittal or *conviction,* the proper judgment shall be entered immediately." Article 37.12. V.A.C.C.P. The judge is without authority to render judgment *non obstante veredicto,* unlike on the civil side. See *Combes v. State,* 162 Tex.Cr.R. 482, 286 S.W.2d 949, at 950 (1956); *Hardy v. State,* 159 Tex.Cr.R. 54, 261 S.W.2d 172, at 174 (1953) (no authority to receive verdict and refuse to abide by it); *Cagle v. State,* 147 Tex.Cr.R. 140, 179 S.W.2d 545–546 (1944); *Castro v. State,* 118 Tex.Cr.R. 53, 42 S.W.2d 779, at 780, 781–782 (1931).

It is axiomatic that the *judgment* of the trial court must conform to the *verdict* on which it is based. 25 Tex.Jur.3d § 3633; see, e.g., *Combes v. State,* supra; *Harris v. State,* 121 Tex.Cr.R. 177, 53 S.W.2d 48, at 49 (1932); *Ex parte Gibson,* 137 Tex.Cr.R. 72, 128 S.W.2d 396 (1939):

"In our opinion [applicable statutes] make it clear that the judgment *follows the verdict* as a matter of law and statutory procedure and is the declaration of the result of trial.... It has been repeatedly held that the judgment *must* follow the verdict. Nothing may be added thereto nor taken therefrom."

*Id.,* at 397 (emphasis in original).

"A judgment is the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant." Article 42.01, § 1, V.A.C.C.P. The judgment should reflect, e.g.:

"7. The verdict or verdicts of the jury or the findings of the court;

8. In the event of *conviction* that the defendant is adjudged guilty of *the offense as found by the verdict of the jury* or the finding of the trial court ...;

\*     \*     \*     \*     \*     \*

11. In the event of *acquittal* that the defendant be *discharged.*"

A trial court may not "enter *another and different judgment* from that called for in the *verdict.*" *Combes v. State,* supra, at 950. The trial court may grant a motion for new trial in that rare instance where "the verdict is contrary to the law and evidence," Tex. R.App.Pro. 30, formerly article 40.03(9) and cases annotated 1101–1103—all predating *Burks–Greene.*

**B**

Decisions of the former court of appeals and of this Court have made clear from the beginning that in a criminal case an appellate court has power and authority to reform and correct a judgment of *conviction* as the law and the nature of the case may require, when the court has the same data for reforming or correcting the judgment as the trial court would have were the judgment reversed or the appeal dismissed. 1 Branch's Annotated Penal Code (2nd Ed.1956) § 688, p. 661–662. The function is not limited to "clerical errors," but is to correct mistaken or erroneous material recitations therein to make the judgment speak the truth consistent with data and information contained in the record. *Barnes v. State,* 116 Tex.Cr.R. 222, 34

S.W.2d 605, at 606 (1930), and cases cited; see also germane cases annotated to former article 44.24 cited in notes 176–178 and 194, together standing for the proposition that former appellate courts, in a proper case, could reform either the judgment or sentence of both, "so as to make them conform to each other *and to the verdict.*" [2] Otherwise, it is the duty of an appellate court "to accord the accused the benefit of the verdict which was rendered by the jury," and to set aside an inconsistent judgment. *Castro v. State*, supra, at 781.

"[R]eformation of judgment and sentence may be done *only* to cause those instruments to reflect the true finding of the fact finder when a such finding is reflected in the verdict . . ." *Milczanowski v. State*, 645 S.W.2d 445, at 447 (Tex.Cr.App.1983). Power to reform a judgment in accordance with the verdict, however, "does not carry with it the power to enter a judgment." *Martin v. State*, 154 Tex.Cr.R. 302, 227 S.W.2d 213, at 216 (1950).

### III

### A

Apart from authority to "reform and correct" a judgment under article 44.24(b) and

its predecessors, every code of criminal procedure provided distinct power and authority to *reverse* judgments with an express mandate to remand the cause in a specifically prescribed instance, *viz:*

"The Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts. *A cause reversed because the verdict is contrary to the evidence shall be remanded for new trial.*" [3]

The duty to *reverse* for insufficient evidence to support a verdict and remand for new trial thus imposed on the Court obviously trumps its authority to "reform and correct" a judgment to make it conform to a verdict that is supported by the evidence. The annotated cases demonstrate that the Court performed its duty to remand, sometimes with expressed reluctance, but without discernable exception. In short, once it concluded the evidence was insufficient to support the verdict, the Court had no choice but to reverse and remand.

### B

In 1978 this Court recognized and acknowledged that one compelling effect of *Burks–Greene* was to render the second sen-

---

**2.** For examples see, e.g., *Norman v. State*, 588 S.W.2d 340 (Tex.Cr.App.1979), cert. denied 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1989) (where indictment, proof, jury charge and verdict all identified controlled substances as "heroin" appellate court may reform erroneous judgment stating "cocaine," and affirm the judgment as thus reformed); *Hughes v. State*, 493 S.W.2d 166, at 170 (Tex.Cr.App.1973) (erroneous judgment may be reformed to show offense of which accused actually convicted from construing indictment); *Huse v. State*, 376 S.W.2d 360 (Tex.Cr.App.1964) (appellate court may correct erroneous recital of jury verdict in judgment to reflect verdict actually rendered by jury).

There were, however, a few unusually quirky situations (as shown by a dearth of annotated cases), such as where the trial court rendered judgment based on a *fatally defective* count in the charging instrument, or adjudged *two* offenses when the jury found guilt on but *one*, and the Court was able to "apply the verdict" to another count or offense alleged therein. E.g., *Garcia v. State*, 141 Tex.Cr.R. 444, 149 S.W.2d 113, at 114 (1941); *Rozier v. State*, 90 Tex.Cr.R. 337, 234 S.W. 666, at 668 (1921) and followings (mostly liquor cases); *Swartz v. State*, 18 S.W. 415 (Tex. App.1892), but compare *Knott v. State*, 93 Tex. Cr.R. 239, 247 S.W. 520, at 522 (1923) (where jury found guilt on *two* submitted offenses, no

reformation applying general verdict to but one where possibly result in injustice to defendant because of uncertainty whether jury assessed more than minimum joint punishment for both offenses); see and compare *Milczanowski v. State*, 645 S.W.2d 445, at 447 (Tex.Cr.App.1983).

**3.** See Article 44.25, C.C.P.1965; article 848, C.C.P.1925; article 939, C.C.C.P.1911; article 939, C.C.P.1895, article 869, C.C.P.1879; O.C. article 744, which read:

"The Supreme Court may revise the judgment in a criminal action, as well upon the law as upon the facts; but when a cause is reversed for the reason that the verdict is contrary to the weight of evidence, the same *shall in all cases be remanded for a new trial.*"

In other words, an appellate court may not reform a judgment where the evidence is insufficient to support the verdict rendered. See, e.g., *Masters v. State*, 165 Tex.Cr.R. 303, 306 S.W.2d 355, at 357 (1957) (duty of the Court to reverse conviction where facts fail to show guilt); accord: *Lozano v. State*, 138 Tex.Cr.R. 549, 137 S.W.2d 1031, at 1032 (1940); *Jolly v. State*, 221 Tex.Cr.R. 279, at 281 (1920); *Mitchell v. State*, 33 Tex.Cr.R. 575, 28 S.W. 475, at 476 (1894). So far as diligent research reveals, the Court adhered to its constitutional and statutory duty under those former articles.

tence of Article 44.25, supra, unconstitutional. *Johnson v. State,* 571 S.W.2d 4, at 6, n. 2 (Tex.Cr.App.1978) (statute unconstitutional to extent of conflict with *Burks–Greene*).[4] The same constitutional command, therefore, now required the judgment of conviction be set aside and, the evidence being insufficient to support a finding of guilt, "the judgment be reformed to show an acquittal," *id.,* 571 S.W.2d at 5; or reversed with order that "judgment of acquittal be entered in the trial court," *Bryant v. State,* supra, at 112.

### C

In those lights, both *Jones* and *Moss,* relied on the court of appeals, are inapposite, albeit for somewhat different reasons.

### 1

In the first place, *Jones* was decided before *Burks–Greene.* Moreover, despite the mandate of Article 44.25, supra, the Court purported to reform and affirm the judgment as a conviction for a "lesser included offense," without identifying any authority to do so; presumably, either it overlooked the mandate or it believed, but failed to state, that it was not applicable to findings in a bench trial and resultant conviction, although they could not be sustained because the evidence was insufficient to support the only

4. Accordingly, Acts 1981, 67th Leg., Ch. 291, p. 817, § 134, revised Article 44.25 by inserting "courts of appeals or" in the first sentence and by *deleting the second sentence entirely,* thus removing the legislative mandate to remand for a new trial.

5. The *Jones* court went on to find that the evidence would support conviction for a different offense that it chose to determine was a "lesser included offense," and under that theory reformed the judgment accordingly and affirmed the conviction. Propriety of that kind of appellate "reformation" is, of course, the issue before us today, and after *Burks–Greene* there are other considerations to be addressed.

6. The majority added an advisory to the trial court, *viz:*

"... However, there is nothing in these [*Burks–Greene*] opinions which would prevent retrial for the offense of burglary of building. We *hold* that the appellant may be retried for the offense of burglary of a building."
*Id.,* 574 S.W.2d at 545. But as former Presiding Judge Onion, again, pointed out, "In its decision in *Greene v. Massey,* supra, the Court left this

offense charged in the indictment. There is nothing in *Burks–Greene,* however, to suggest that their "dictates" do not reach trials before the court.[5]

### 2

Indeed, *Moss* presented an identical situation—except that the jury rendered a verdict of guilty and assessed punishment. On original submission *prior* to *Burks–Greene* a Court panel closely followed *Jones,* in saying, "While this conviction cannot be sustained as a burglary of habitation ... the evidence is sufficient to sustain a conviction for burglary of a building," and in affirming the conviction and reforming the judgment to reflect a conviction on a "lesser included offense." *Moss,* at 545.

On rehearing after *Burks–Greene,* however, the Court majority acknowledged that those decisions *"prevent the retrial* of defendant for burglary of a residence," but nonetheless *reversed* the judgment and *remanded* the cause to the trial court, carefully eschewing entering or directing entry of a judgment of acquittal. *Ibid;* see and compare dissenting opinion of former Presiding Judge Onion, at 546.[6]

### D

In *Burks* the Supreme Court concluded:

question open and did not decide it (see footnote # 7)." *Id.,* 574 S.W.2d at 546. Moreover, we later cautioned against relying on such advisory on original submission in *Garrett v. State,* 749 S.W.2d 784, at 794, n. 13 (Tex.Cr.App.1986), only to have the passage itself called an "advisory opinion" on rehearing at 803–804 (1988).
Nonetheless, that advisory would be alluded to or canted in other opinions for more than a decade, e.g.:
*Rogers v. State,* 575 S.W.2d 555, at 559, n. 3 (Tex.Cr.App.1979);
*Ex parte Harris,* 600 S.W.2d 791, at 793 (Tex. Cr.App.1980);
*Granger v. State,* 605 S.W.2d 602, at 605 (Tex. Cr.App.1980);
*Black v. State,* 637 S.W.2d 923, at 926 (Tex.Cr. App.1982);
*Flanagan v. State,* 675 S.W.2d 734, at 739 (Tex.Cr.App.1984);
*Seidel v. State,* 654 S.W.2d 39, at 40 (Tex. App.—Dallas 1983), PDR refused;
*Welch v. State,* 683 S.W.2d 54 (Tex.App.— Houston [1st] 1984), no PDR;
*Keith v. State,* 692 S.W.2d 921, at 923 (Tex. App.—Houston [14th] 1985), PDR refused
*Keith v. State,* 721 S.W.2d 294 (Tex.Cr.App.

"... Since we hold today that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, *the only 'just' remedy available* for that court *is the direction of a judgment of acquittal.*"

*Id.*, at 437, S.Ct., at 2150–2151, L.Ed.2d, at 14; see *Greene*, supra, 437 U.S., at 24, 98 S.Ct., at 2154, 57 L.Ed.2d, at 21.[7]

Months before the opinion on rehearing in *Moss*, the Supreme Court reminded the bench and bar of a truism founded in the common law principle of *autrefois acquit, viz:*

"... [T]he law attaches particular significance to an acquittal. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent he may be found guilty.'"

*United States v. Scott*, 437 U.S. 82, at 91, 98 S.Ct. 2187, at 2194, 57 L.Ed.2d 65, at 74 (1978); *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).[8] "[I]t should make no difference that the *reviewing* court, rather than the trial court, determined the evidence to be insufficient." *Burks*, supra, at 11, S.Ct., at 2147, L.Ed.2d, at 9.

Thus the latent reason the *Moss* majority reversed and remanded instead of ordering

"the only 'just' remedy available" becomes patent: Entry of a judgment of *acquittal* not only commands that "the defendant be at once discharged," Article 37.12, V.A.C.C.P., but also raises the troubling question of whether the Double Jeopardy Clause would, indeed, prevent retrial for a "lesser included offense." See, e.g., *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (whatever the sequence, double jeopardy doctrine forbids successive prosecutions for greater and lesser offense), decided after *Jones* but prior to *Moss.*

By pretermitting entering or directing entry of a judgment of acquittal to which Moss was clearly entitled and, instead, remanding the cause, the *Moss* majority sought to finesse its way around "the only 'just' remedy" to achieve a "retrial" for a lesser included offense—whether on the same or a new indictment it did not say—again, contrary to dictates of *Burks–Greene* and of our statutes.

**E**

After closer examination, then, neither *Jones* nor *Moss* actually "employed the procedure" the court of appeals purported to "adopt" in this cause. *Bigley*, supra, at 415.

On rehearing and after the fact, the *Moss* majority said that in *Jones* "we *should* have remanded the cause for the trial court to reassess punishment." *Id.*, at 545. Of

1986); *Ex parte Keith*, 761 S.W.2d 442, at 443, n. 1 (Tex.App.—Houston [14th] 1988), remand order set aside *Ex parte Keith*, 782 S.W.2d 861, at 864 (Tex.Cr.App.1989); *Chandler v. State*, 743 S.W.2d 736, at 744 (Tex.App.—Corpus Christi 1987), reversed and remanded on other grounds *Chandler v. State*, 790 S.W.2d 635 (Tex.Cr.App.1990); *Ex parte Stephens*, 753 S.W.2d 208, at 210–211 (Tex.App.—Dallas 1988), affirmed *sub nom. Stephens v. State*, 806 S.W.2d 812 (Tex.Cr.App. 1990), cert. denied —— U.S. ——, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991).

Incidentally, the "advisory opinion" in *Garrett v. State*, supra, turned out to be correct. *Stephens v. State*, supra, 806 S.W.2d at 819–820.

7. "... Since the constitutional prohibition against double jeopardy is fully applicable to state criminal proceedings, *Benton v. Maryland*, supra, [395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707] [(1969)] we are bound to apply the standard announced in *Burks* to the case at hand.

If we were confronted only with the per curiam opinion of the Florida Supreme Court, reversal in this case would follow. * * * "

*Greene*, supra.

8. "The constitutional right of a defendant not to be further prosecuted following a jury verdict of not guilty is assumed to be 'fundamental' because it is the most 'absolute.' [notes omitted throughout] The Double Jeopardy Clause accords absolute finality to jury acquittals even where the prosecution is acknowledged to have acted in good faith and even where the acquittals are known to be 'egregiously erroneous.' Therefore, the constitutional protection against double jeopardy prohibits a second trial following an acquittal, no matter how 'egregiously erroneous' the legal rulings leading to the judgment of acquittal might be.

'[J]ury acquittals are final ... [because] they represent factual findings of innocence by a body that has unreviewable authority to find facts.' Thus, jury acquittals are final (and jury convictions are not) because they are 'statements of actual innocence.'"

Note, *Off on a Technicality*, 33 S.Tex.L.Rev. 287, at 294–295 (1992).

course, by that time there was no way to accomplish a "should've."

In *Moss* itself, the majority did not "reform the judgment of the district court to reflect a conviction of [a lesser included offense]" nor "remand the cause for a new trial as to punishment," as the court of appeals would have it, *Bigley*, at 415. Rather, as demonstrated *ante*, agreeing with former Presiding Judge Onion that *Burks–Greene* "prevent the retrial ... for the offense of burglary of a residence" of which he had been convicted, it disguised the "acquittal" required by *Burks–Greene* with a gratuitous (and since discredited) "advisory" about "retrial" for another offense. *Moss*, at 545.

## IV

Today this Court affirms the disposition of the court of appeals essentially on its own skimpy textual reading, *viz:*

"... Nothing in the text of Rule 80 so limits the power of the courts of appeals to reform judgments of the court below. Therefore, we refuse to limit the authority of the courts of appeals to reform judgments to only to situations involving mistakes of a clerical nature."

Slip opinion, at 3.

However, as well in parsing the full text of the rule, limitations will be found in the contextual meaning of "to reform," related here to "judgments," as authoritatively construed by the Court over more than one hundred years. See discussion of authorities in Part II B, *ante.*[9] So far as diligent research reveals, never before 1978 did the Court "reform and correct the judgment" of the court below on a determination that the evidence was insufficient to support the verdict of guilt found by a jury; indeed, until then it was statutorily required to reverse the judgment and remand the cause. See Part III B. After *Burks–Greene* where evidence was insufficient, the Court was constitutionally mandated to grant "the only 'just' remedy available," i.e., direction of a judgment of acquittal—just as *Moss* did in effect, by deed if not word. See Part III D and E, *ante.*

The judgment of an appellate court directing the trial court to enter a judgment of acquittal necessarily nullifies the underlying *verdict* of guilt as well as the original judgment of conviction. Without a verdict, unswerving judicial construction of former article 44.24(b) defined "reform" in such a way as to dictate that "reforming" a judgment to reflect a conviction for a lesser included offense is not a permissible option. The settled meaning of "reform" in context of the

9. Legislative use and judicial construction of "reform" in the context of former article 44.24(b) and predecessors appears unique when compared to comments in Black's Law Dictionary (Rev.Fourth Ed.1968), at 1446, *viz:*

"It is to be observed that 'reform' is seldom, if ever, used of [sic] the correction of defective pleadings, *judgments*, decrees or other judicial proceedings; 'amend' being the proper term for that use. * * * "

Early on, Texas scriveners used the statutory terms "reform and correct," if not interchangeably, to connote a single function and its purpose: to reform the judgment in order that it be correct—that it conform to the verdict, free from *defects of commission* and *deficiencies of omission.* See, e.g., *Thomas v. State*, 31 Tex.Cr.R. 82, 19 S.W. 901 (1892); *Burks v. State*, 55 S.W. 824, at 825–826 (Tex.Cr.App.1900); *Turner v. State*, 44 Tex.Cr.R. 69, 68 S.W. 511, at 512 (1901); *Brady v. State*, 74 S.W. 771, at 772 (Tex.Cr.App. 1903). As to the latter, where two statutory requisites were omitted from the judgment in *McCorquodale v. State*, 54 Tex.Cr.R. 344, 98 S.W. 879, at 885 (1906), on rehearing the Court reasoned:

"... It occurs to us that the language used in our statute, 'reform and correct,' has more force than if the statute contained the power merely to 'correct.' Evidently the Legislature used the word 'reform,' in addition to that of 'correct,' for some purpose, and it has a larger signification. 'Reform' means to correct; to make anew; to rectify. [citation omitted.] ... We accordingly hold that the judgment below should be reformed and corrected, so as to make it read, in connection with the judgment as entered, and following the verdict, as follows, to wit: [formally adjudging guilt of offense *'as found by the jury,'* and fixing punishment *'as has been determined by the jury,'* et cetera]."

*Id.*, 98 S.W. at 887. (The dissent argued those omissions meant the purported judgment was not "final," so the Court lacked appellate jurisdiction to consider and reform it. *Id.*, 98 S.W. at 887–889). For a full treatment of both views, see *Robinson v. State*, 58 Tex.Cr.R. 550, 126 S.W. 276, at 278 (1910) (opinion on rehearing).

former statute must remain the same in similar context of a successor rule of court. See 1 V.T.C.A. Government Code, § 22.108 (1987) (rules may not "abridge" or "modify" substantive rights of litigant).

Because once again, as in *Moss,* supra, a decision "should be made with reasoning, but the majority declines to reason," *id.,* at 546 (Onion, P.J., dissenting), instead woodenly approves a literal reading of a rule of court directly contrary not only to consistent judicial construction of like statutory language used since 1858 from which the rule is derived, but also to constitutional dictates since 1978 entitling appellant to a judgment of acquittal, I must dissent.

MILLER and MALONEY, JJ., join.