**Affirmed as Modified; Opinion Filed November 24, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01604-CR

### AUSTIN BILL HIXSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

### On Appeal from the 416th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 416-81668-2014

## MEMORANDUM OPINION

Before Justices Lang, Evans, and Whitehill
Opinion by Justice Lang

A jury convicted Austin Bill Hixson of aggravated assault with a deadly weapon, not a firearm. The jury assessed punishment at three years' imprisonment, and recommended that the sentence be probated. The trial court sentenced appellant to three years' imprisonment, and probated the sentence for ten years. In a single issue, appellant contends the evidence is legally insufficient to support his conviction. We modify the trial court's judgment and affirm as modified.

On May 20, 2014, Frisco police were dispatched to the home of appellant's parents, Jason and Kimberly Hixson, after police received a 911 call from Jason stating his son had assaulted his mother. Jason testified that on the date of the assault, neither appellant nor Kimberly were "on their meds" for their bipolar conditions. Jason testified he did not remember making a 911 call that evening, but he acknowledged his voice was on the 911 recording, along with his wife's and the dispatcher's voices. Jason testified he believed the entire incident was "blown out of proportion" and the case was "just a waste of time." Jason further testified he did not remember telling the responding officer that his wife was telling the truth about what had happened and about appellant holding a knife to her throat, nor did Jason remember giving a written statement to the police that stated appellant "got into a confrontation with his Mom." Jason did, however, acknowledge that the written statement given to the police had his name on it and was in his handwriting.

Kimberly Hixson, the complainant, testified that when she smelled marijuana in the house that morning, she asked appellant not to smoke in the house and they began arguing. Kimberly left to go to the store. Appellant followed Kimberly to her car and asked for an item that was in the back seat. When Kimberly refused to unlock the car door, appellant "punched the hood" of the vehicle three times. He then walked to the back of the vehicle and "took out the license plate." Kimberly called Jason and told him what appellant had done. Jason told her to stay away for the rest of the day. That evening, Kimberly met Jason at a local store and they went home together. Appellant's friends Donovan and Kristian were at the house with appellant.

Kimberly testified that when she entered the house and saw the kitchen was dirty, she was "livid." She and appellant exchanged "heated words." Kimberly threatened to call

appellant's bail bondsman and "go off his bond." Kimberly explained that she was a co-signer on a bond for appellant for a different offense. Kimberly stood at the kitchen sink cleaning up. Appellant came up behind her and pulled a "bread knife" from the knife block on the counter. Kimberly testified appellant put his left arm around her arm and held the knife out near her neck. Kimberly testified she did not remember if appellant said anything while holding the knife. However, she acknowledged that in her written statement to the police she said appellant held the knife close to her neck and said, "If I'm going to jail, it would be for a reason." Kimberly testified she did not feel scared, she felt "annoyed," and the only reason her written statement to the police stated she was scared was because she was "really angry." Kimberly admitted her written statement said she believed appellant would "hurt me fatally and I believe that he was a ticking time bomb."

During cross-examination, Kimberly testified she did not remember the day of the assault, and she was basing her testimony on "what the State showed me today." Kimberly testified she did not feel threatened when appellant held the knife close to her neck; she felt angry. Kimberly acknowledged her voice was in the background on the audiotape of the 911 call saying, "He held a knife to my neck." Kimberly also acknowledged the written statement had her name and handwriting on it. Kimberly testified she did not recall what ended the argument she had with appellant, but she remembered appellant left the house with his friend Donovan.

Frisco police officer Matthew Poe testified he responded to the Hixsons' home about 6:00 p.m. and talked with Jason and Kimberly. They stated their son had assaulted Kimberly and had already left the location. Poe testified Kimberly was "very, very aggravated, angry, and upset." When Poe questioned Jason separately from Kimberly, Jason confirmed Kimberly's statements that appellant held a knife near her throat and threatened her. Poe testified he did not

see any marks on Kimberly's neck or body. When Kimberly took Poe into the kitchen where the assault occurred, Poe saw a large knife sitting on the countertop. Poe testified he believed both Kimberly and Jason were telling the truth. Kimberly gave a written statement. Jason initially refused to give a written statement because he did not want to get appellant into trouble. However, Jason eventually gave a written statement to Poe.

Poe testified that while he was questioning Jason, appellant called the house. Poe talked to appellant and agreed to meet him at a nearby store parking lot. Poe and another officer meet with appellant and his friend Donovan Hayes. Poe testified appellant stated he argued with his mother but he never touched her. Appellant said the argument began that morning after his mother said she smelled marijuana coming from his room. Appellant admitted he followed his mother out to her car and hit the hood of her car when she would not let him get something from the back seat. Appellant said he argued with his mother again when she returned to the house that evening. Appellant said at some point, his father told him to leave the house and he left. The 911 call recording and photographs of Kimberly, the kitchen, the knife block, and the knife were admitted into evidence.

Hunter Kristian Coleman testified he was at appellant's house when appellant and appellant's mother had an argument. Kristian testified he was in the living room with Donovan Hayes and appellant's father and saw everything that happened. At no time did appellant put his hands on his mother, hold a knife, or threaten her. Kristian testified he saw appellant's mother push appellant. After that, he, Donovan, and appellant left the house. Later that evening, Donovan called Kristian and said appellant had been arrested. Donovan asked Kristian to come to the location where they were talking to the police and give a witness statement. Kristian testified his written statement said nothing about appellant and his mother arguing in the

evening, it only discusses the argument they had in the morning and ends with appellant's mother leaving the house.

Donovan Hayes testified he and Kristian were at appellant's house on May 20, 2015 when appellant's parents came home. Donovan had been at appellant's house all day. As appellant's parents carried in groceries, Kristian left. Appellant and his mother began arguing. Donovan testified he never saw appellant waive a knife at his mother or grab her arm, but he did see appellant's mother put her hands on appellant "a couple times." Donovan testified he did see appellant go into the kitchen when appellant's mother was in the kitchen, and he did see appellant "get close" to his mother while in the kitchen, but he never saw appellant with a knife. Donovan testified appellant's mother started the argument, but appellant "kept calm." Donovan encouraged appellant to go with him, and they left the house. Donovan testified he gave a written statement to the police.

APPLICABLE LAW

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); Wise *v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). We are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326.

To obtain a conviction for aggravated assault with a deadly weapon, a knife, the State had to prove beyond a reasonable doubt that appellant intentionally, knowingly, or recklessly threatened Kimberly Hixson with imminent bodily injury, and appellant used or exhibited a

deadly weapon, a knife, during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

DISCUSSION

Appellant contends the evidence is legally insufficient to support his conviction because there was no direct evidence to establish that appellant intentionally, knowingly, or recklessly committed an assault with a deadly weapon. Appellant asserts that Kimberly's testimony contains inconsistent statements about her anger towards appellant. Appellant argues that the 911 call and subsequent written statements to the police were done out of anger and render the evidence insufficient. The State responds that the evidence is sufficient to show appellant chose to pick up a large, serrated knife and hold it near his mother's throat while threatening her.

Conflicting evidence was presented at trial. Jason testified he did not remember the assault, calling 911, or giving a written statement to the police. However, he acknowledged it was his voice on the 911 call and that his written statement to the police said appellant assaulted Kimberly. Likewise, Kimberly testified she did not feel threatened when appellant held a knife close to her neck, but acknowledged her written statement to the police said she believed appellant would hurt her "fatally" and that he was a "ticking time bomb." Kristian testified he witnessed the argument and never saw appellant holding a knife, but his written statement to the police said he witnessed the argument between appellant and Kimberly that occurred that morning and it ended when Kimberly left the house. Donovan testified that Kristian had left the house before appellant argued with Kimberly that evening. Donovan also said he never saw appellant touch his mother or have a knife in his hand while arguing with his mother, but he acknowledged seeing appellant go into the kitchen where appellant's mother was standing and saw appellant go "close" to his mother.

It was the jury's function as the trier of fact to resolve any conflicts in the evidence, and the jury was free to accept or reject any and all of the evidence presented by either side. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Viewing the evidence under the proper standard, we conclude a rational trier of fact could find beyond a reasonable doubt that appellant knowingly threatened Kimberly while holding a knife close to her neck. Thus, the evidence is sufficient to sustain the conviction for aggravated assault with a deadly weapon. We decide against appellant on his sole issue.

MODIFY JUDGMENT

We note the trial court's judgment incorrectly recites the presiding judge was the Honorable Chris Oldner and that the court assessed the punishment. The record shows the Honorable James Fry presided over the proceedings and the jury assessed punishment. We modify the judgment to reflect the judge presiding is the Honorable James Fry and the punishment was assessed by the jury. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.— Dallas 1991, pet. ref'd).

As modified, we affirm the trial court's judgment.

/s/Douglas S. Lang
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
141604F.U05

-7-



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AUSTIN BILL HIXSON, Appellant

No. 05-14-01604-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the 416th Judicial District
Court of Collin County, Texas (Tr.Ct.No.
416-81668-2014).
Opinion delivered by Justice Lang, Justices
Evans and Whitehill participating.

Based on the Court's opinion of this date, the trial court's judgment is **MODIFIED** to as follows:

The section entitled "Judge Presiding" is modified to show "Hon. James Fry."

The section entitled "Punished Assessed by" is modified to show "Jury."

As modified, we **AFFIRM** the trial court's judgment.

Judgment entered this 24th day of November, 2015.