**Affirmed as Modified and Opinion Filed October 10, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-00852-CR

**EARNEST E. STARNES III, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F12-20976-V**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Myers, and Justice Brown
Opinion by Chief Justice Wright

A jury convicted Ernest E. Starnes III for assault involving family violence, having a prior conviction for assault involving family violence. The trial court assessed punishment, enhanced by a prior felony conviction, at ten years' imprisonment, probated for four years, and a $1,500 fine. In two issues, appellant contends the evidence is insufficient to support his conviction and the trial court's judgment should be modified to delete restitution. We modify the trial court's judgment and affirm as modified.

EVIDENCE PRESENTED

Amber Starnes, the complainant, was appellant's wife at the time of the assault. At trial, Amber testified she and appellant had a "verbally abusive relationship" and were not happy in their relationship. On the evening before the assault, Amber and appellant went to a bar in

DeSoto and had several drinks. When they returned home, Amber went to bed and appellant fell asleep on the couch. The next morning, Amber woke appellant for work. After appellant showered and got dressed, he mentioned he wanted to go to his mother's house on Sunday. Amber replied that she did not want to go because appellant's mother did not like her. Appellant immediately jumped on her and pinned her down on the bed. Appellant head-butted her several times, grabbed her throat with both his hands, and he slapped her in the face and on the leg repeatedly. Amber testified she sustained bruises on her arms and leg, and a lump on her head. When she freed herself from appellant, she ran out the back door toward a park next to her house. She dialed 911 on her cell phone and asked for police assistance. Amber testified she ended the 911 call abruptly when appellant came outside because she was afraid. A short time later, the 911 operator called her back. While Amber talked with the 911 operator, appellant asked her why she was calling the police. Appellant left the premises before the police arrived.

Amber further testified that after she talked with the police, she moved out of the house that day and stayed with a friend. She eventually moved out of state. Appellant was arrested about six months after the assault. Appellant asked her to sign an affidavit for non-prosecution, telling her that if he went to trial, he would say he was never there that day and that she made up the entire assault story to "get back at him." Amber testified she signed the affidavit of non-prosecution because she wanted to be done with appellant. During cross-examination, Amber testified she had been arrested for family violence and public intoxication in 2011

Audio recordings of the two 911 calls were admitted into evidence. During the first call, Amber stated her husband had beat her and she needed the police. Amber stated she fled the house and was walking to a nearby park behind her house. Amber stated "here he comes" before she disconnected from the call. During the second call, Amber said "yes" when the operator

–2–

asked if her husband was there with her. A man's voice stated "now I'm going to lose my new job."

DeSoto police officer Steven Hall testified he answered a domestic disturbance call on May 25, 2012 involving Amber Starnes. Hall testified Amber was distraught and upset when he arrived, and she stated she had been assaulted by her husband. Hall testified he saw a "raised part on her forehead" and "marks" on different parts of her body that matched what she was telling him. Hall took Amber's statement, photographed her injuries, and gave her information about shelters, protective orders, counseling, and other resources. Photographs of Amber taken at the scene were admitted into evidence; a videotape of the officers arriving at Amber's house and interviewing her was also admitted into evidence. On the videotape, Hall stated he had been called to the same house the previous week, he questioned Amber about the assault, and he stated he saw a "raised" area on her forehead and bruises on her arm and leg.

Aaron Fouts testified on appellant's behalf. Fouts, who owns a construction company, often used appellant as a sub-contractor for repairs, roofing, painting, and handyman jobs. Fouts testified that on May 24, 2012, appellant came to his house around 6:30 p.m. and they "hung out" in Fouts's backyard. Amber kept calling appellant's cell phone, asking appellant to come to bar and pay her tab. Appellant eventually turned off his phone. Fouts testified he and appellant "cooked out" in the backyard that evening. Appellant stayed overnight on the couch. When they awoke the next morning, they went their separate ways to different jobs. Fouts further testified he had no idea how appellant's voice could be on a 911 call on the same day appellant stayed overnight with him.

Appellant denied he assaulted Amber and testified he was not even home at the time of the alleged assault because he spent the night with Fouts. Appellant testified he went to work the next morning after leaving Fouts's home. He returned to his house after work. Appellant

–3–

testified that while visiting with Fouts the day of the alleged assault, Amber continually called appellant's cell phone asking him to come to a tavern and pay her bar tab. Appellant testified he refused and turned off his cell phone. When he went home after work the next day, he greeted Amber as he came in. According to appellant, Amber said, "you'll see," and then ignored him because she was angry that he did not come home the night before. Appellant denied it was his voice on the 911 call. During cross-examination, appellant admitted he had head-butted Amber in the past, and he had slapped her on a prior occasion only because she had slapped him twice. Appellant testified he had prior convictions for theft, criminal mischief, four DWIs, and a 2004 conviction for assault involving family violence against his first wife.

INSUFFICIENT EVIDENCE

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); Wise *v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). We are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326.

To obtain a conviction for assault involving family violence, having a prior assault involving family violence, the State had to prove beyond a reasonable doubt that appellant intentionally, knowingly, or recklessly caused bodily injury to Amber Starnes, a member of appellant's household, by striking her with his head and his hands, and that appellant was legally convicted of a previous assault involving family violence in December 2004. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2015); TEX. FAM. CODE ANN. §§ 71.0021, 71.005 (West

–4–

2014 & Supp. 2015). "Bodily injury" means physical pain, illness, or any impairment of physical condition. TEX. PENAL CODE ANN. § 1.07(a)(8) (West 2011).

In his first issue, appellant contends the evidence is insufficient to support his conviction because his defense at trial shows he was not at home at the time Amber was injured. Appellant asserts Amber's testimony was not credible because she had a history of calling the police whenever they had disagreements, she was trying to "get him" as a parting shot to their marriage, and she admitted they had a volatile relationship. Appellant argues Amber's signed affidavit of non-prosecution, coupled with the lack of physical or medical evidence to substantiate the allegations, weighs against the jury's findings. The State responds that the evidence is sufficient to support the conviction because the jury, as fact finder, rejected appellant's alleged defense and found him guilty of the offense.

Conflicting evidence was presented to the jury. Amber testified appellant pinned her down on the bed, head-butted her, grabbed her neck with both hands, and slapped her on the leg several times. After Amber fled the house, she dialed 911. One of the 911 calls between Amber and the 911 operator contained the voice of a man whom Amber identified as appellant. Officer Hall testified he interviewed Amber and her injuries appeared to be consistent with what she described happened to her during the assault. On the other hand, both Fouts and appellant testified that appellant spent the night with Fouts and was not home at the time of the alleged assault. Appellant further denied that the male voice heard on the 911 call belonged to him.

It was the jury's function as the trier of fact to resolve any conflicts in the evidence, and the jury was free to accept or reject any and all of the evidence presented by either side. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Viewing the evidence under the proper standard, we conclude a rational trier of fact could find beyond a reasonable doubt that appellant knowingly caused bodily injury to Amber by hitting her

–5–

with his head and hands. Thus, the evidence is sufficient to sustain the conviction for assault involving family violence. We overrule appellant's first issue.

## MODIFY JUDGMENT

In his second issue, appellant contends the trial court's judgment should be modified by deleting the $427.20 restitution. The record shows that during the punishment phase, the prosecutor asked the trial court to include a condition of community supervision that appellant reimburse the State for the "flight arrangements" for Amber in the amount of $427.20. Both the State and defense reasoned the reimbursement would be similar to court costs and that the trial court should order the reimbursement as a condition of community supervision. The trial court granted the State's request and ordered appellant to reimburse the State in the amount of $427.20 as a condition of his community supervision. The trial court's judgment, however, incorrectly recites the $427.20 as restitution. When a variation between the oral pronouncement of the sentence and the written memorialization of the sentence exists, the oral pronouncement controls. *See Coffey v. State*, 979 S.W.2d 326, 329 (Tex. Crim. App. 1998). We sustain appellant's second issue. The State agrees that the judgment should be modified to delete restitution.

We modify the trial court's judgment to delete the $427.20 restitution. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).

As modified, we affirm the trial court's judgment.

/Carolyn Wright/
_____
CAROLYN WRIGHT
CHIEF JUSTICE

Do Not Publish
TEX. R. APP. P. 47
150852F.U05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EARNEST E. STARNES III, Appellant

No. 05-15-00852-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F12-20976-V.
Opinion delivered by Chief Justice Wright.
Justices Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section entitled "Restitution" is modified to show "N/A."

As modified, we **AFFIRM** the trial court's judgment.

Judgment entered October 10, 2016.