COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




BRAD EDGAR BRANSON,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00366-CR



Appeal from the


195th Judicial District Court


of Dallas County, Texas 


(TC# F-0457606-QN) 


O P I N I O N


 This is an appeal of a conviction for the felony offense of escape while causing serious
bodily injury. Appellant pled guilty to the offense in an open plea without a recommendation as
to punishment. The trial court found Appellant guilty and sentenced him to 10 years'
imprisonment in the Institutional Division of the Texas Department of Criminal Justice and a
$5,000 fine. In his sole issue, Appellant argues the trial court violated his state and federal
constitutional rights when it accepted his guilty plea because it was not supported by sufficient
evidence, was involuntary, and was coerced by his trial counsel.

 At the plea hearing, the trial court admonished Appellant as to the charged offense, the
consequences of his entering an open plea of guilty, and the range of punishment. Appellant
acknowledged that he understood the court's admonishments and stated that he was freely and
voluntarily waiving his rights as listed in the plea agreement form. Appellant pled guilty to the
charge as indicted, agreeing that it was freely and voluntarily given. The State introduced into
evidence Appellant's judicial confession and stipulation of evidence. Appellant's signed judicial
confession was admitted without objection. Appellant agreed that his judicial confession was
freely and voluntarily given. The State then presented evidence through the testimony of Dallas
police officers and a security guard.

 Detective Stephen Walthol testified that on October 24, 2004, he was working off-duty at
the Smirnoff Music Center, an outdoor concert venue, at the Freaker's Ball, an all-day heavy-metal hard-rock concert. Around 1:50 p.m., Detective Walthol was notified that there was an
individual, later identified as Appellant, who was in the parking lot throwing beer bottles at
patrons and at cars passing by. When Detective Walthol went to investigate, he spoke to
Appellant and Appellant denied the allegations. During the course of that interview, the
detective determined that Appellant was heavily intoxicated from drinking alcohol. Detective
Walthol placed Appellant under arrest for public intoxication. He then handcuffed Appellant's
hands behind his back and escorted Appellant back to the facility's police office to do the arrest
paperwork.

 As Detective Walthol was completing the paperwork, Appellant ran out of the office. 
Detective Walthol chased after Appellant and grabbed Appellant by the back of his shirt as he
was exiting the door. Appellant's shirt ripped down his back and Appellant continued running
out the door and toward the Music Center's plaza. Appellant ran into the plaza area, which was
crowded with patrons and concession stands. At this point, Detective Walthol and Officer
Robert Wilcox, who came over to assist, were chasing Appellant through the crowd on the plaza
area. Appellant was bumping into people as he was trying to get away. According to Detective
Walthol, when Appellant saw Officer Wilcox running towards him, he lowered his shoulder and
"ran over the officer . . . ." At the hearing, Detective Walthol provided an in-court demonstration
of Appellant's movements. Detective Walthol explained that Appellant's hands were handcuffed
behind his back and he was leaning forward. Appellant saw Officer Wilcox coming. When
Officer Wilcox reached him, Appellant bent over and as the officer grabbed the top of Appellant,
Appellant lifted up and flipped Officer Wilcox over his back. Officer Wilcox hit a support pole
of a concession stand canvas cover and then fell onto the concrete, hitting the back of his head. 
Appellant stayed on his feet and continued running after the collision. About twenty feet away,
Appellant was apprehended by other officers. As Appellant was escorted back to the police
office, he was yelling obscenities at the crowd, but had otherwise calmed down. Detective
Walthol believed that Appellant's harmful acts to Officer Wilcox were intentional. Detective
Walhol also noted that Officer Wilcox was in uniform that day.

 Gary Lewis, a security supervisor at the Music Center, was working on the day of the
incident. Mr. Lewis gave chase with other officers, including Officer Lorne Ahrens, after
Appellant escaped from the police office. By the time Mr. Lewis rounded the corner, Officer
Wilcox was already upside down in the air, with his legs in the air. When they reached Officer
Wilcox, he was on the ground and his eyes were twitching and rolling back into his head. Officer
Wilcox was not coherent, he was having difficulty breathing, and there was blood coming from
the back of his head. Officer Ahrens also recalled that Officer Wilcox was starting to foam at the
mouth, was gurgling, and not responding. Officer Wilcox received medical treatment on-site and
was then transported by paramedics to the hospital.

 Officer Ahrens with two other officers transported Appellant to Lew Sterrett Jail. While
en route, Appellant was extremely belligerent, shouting obscenities the entire time, and refusing
to comply with their orders. He spit on them and tried to kick the driver while they were
traveling on a public highway. Once they reached the jail, Appellant was cursing and behaving
aggressively. Appellant appeared to have some cuts and abrasions from his escape as well as
prior injuries. Appellant refused all medical attention at the jail so he was transported to
Parkland Hospital.

 Officer Wilcox testified that on October 24, 2004, he was working in an off-duty capacity
at the Smirnoff Music Center. Due to his injuries, Officer Wilcox had no memory of the incident
and could not remember anything that happened that day. Officer Wilcox was hospitalized for
three days for treatment of his injuries, including a severe concussion. He also had to take two
weeks off of work due to the extent of his injuries. Officer Wilcox's EMS treatment and medical
records from the incident were admitted into evidence.

 At the conclusion of the hearing, the trial court found Appellant guilty as charged in the
indictment. Finding probation not appropriate, the trial court assessed punishment at 10 years'
imprisonment in the Institutional Division of the Texas Department of Criminal Justice and
imposed a $5,000 fine.

 In one issue, Appellant argues the trial court violated his state and federal constitutional
rights when it accepted his guilty plea because it was not supported by sufficient evidence. 
Appellant also argues that his plea of guilty was involuntary and coerced, which he had alleged in
the affidavit he filed with his motion for new trial.

 Under Article 1.15 of the Texas Code of Criminal Procedure, when a defendant waives
his right to a jury trial and pleads guilty, the State must introduce sufficient evidence into the
record to support the plea and to show that the defendant is guilty, and the said evidence must be
accepted by the court as the basis for its judgment. See Tex.Code Crim.Proc.Ann. art. 1.15
(Vernon 2005); Ex parte Martin, 747 S.W.2d 789, 792-93 (Tex.Crim.App. 1988). The State's
evidence must embrace every essential element of the offense charged. Stone v. State, 919
S.W.2d 424, 427 (Tex.Crim.App. 1996). In this case, the State was required to prove that
Appellant escaped from custody after being arrested for public intoxication, and to effect his
escape, he intentionally and knowingly caused serious bodily injury to Officer Wilcox. See
Tex.Pen.Code Ann. § 38.06(a)(1), (e)(1)(Vernon 2003). "Serious bodily injury," means bodily
injury that creates a substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily member or organ. 
Tex.Pen.Code Ann. § 1.07(a)(46)(Vernon Supp. 2006).

 Appellant asserts that the State's evidence was insufficient to show that he knowingly or
intentionally caused serious bodily injury to Officer Wilcox. Intent can be inferred from acts,
words, and conduct of a defendant. Cooper v. State, 67 S.W.3d 221, 225 (Tex.Crim.App. 2002);
Dues v. State, 634 S.W.2d 304, 305 (Tex.Crim.App. 1982).

 The evidence shows that Appellant was placed under arrest for public intoxication at the
Smirnoff Music Center and was escorted back to the facility's police office for booking. While
in the office, Appellant ran out the door. Several officers chased after Appellant as he fled
through the crowd in the plaza area. According to Detective Walthol, Appellant observed
Officer Wilcox, in uniform, approach him and as Officer Wilcox reached him, Appellant bent or
leaned over. When Officer Wilcox grabbed the top of Appellant, Appellant lifted him up and
flipped him over his back. Officer Wilcox flew up into the air, hit a support pole, and then hit his
head on the concrete ground. Appellant continued his attempt to escape after the collision. 
Detective Walthol believed that Appellant's actions were intentional. Eyewitnesses described
Officer Wilcox's injuries as serious, noting that Officer Wilcox was incoherent, his eyes were
twitching and rolling back into his head, blood was coming from the back of his head, he had
difficulty breathing, was gurgling, and not responsive. Officer Wilcox suffered a severe
concussion and was transported to the hospital where he received medical treatment for three
days.

 From the evidence presented, the trial court could have reasonably inferred from
Appellant's conduct that he intended to cause serious bodily injury to Officer Wilcox, and that
indeed Officer Wilcox suffered serious bodily injury. Further, Appellant's judicial confession
constitutes some evidence to substantiate Appellant's guilt. See Pitts v. State, 916 S.W.2d 507,
510 (Tex.Crim.App. 1996); Ybarra v. State, 93 S.W.3d 922, 927-28 (Tex.App.--Corpus Christi
2002, no pet.)(It is well-settled that a judicial confession, standing alone, is sufficient evidence to
sustain a conviction upon a guilty plea). Accordingly, we conclude there was sufficient evidence
to support the trial court's finding of guilty in this case.

 In passing, Appellant claims that his guilty plea was involuntary and coerced. No plea of
guilty shall be accepted by the court unless it is freely and voluntarily given. See Tex.Code
Crim.Proc.Ann. art. 26.13(b)(Vernon Supp. 2006). In considering the voluntariness of a guilty
plea, we examine the record as a whole. Martinez v. State, 981 S.W.2d 195, 197 (Tex.Crim.App.
1998). A showing in the record that the defendant was properly admonished is prima facie
evidence that his plea was knowingly and voluntarily entered. Id. Upon this showing, the
burden shifts to the defendant to show he entered the plea without understanding its
consequences. Martinez, 981 S.W.2d at 197.

 The record shows that the trial court properly admonished Appellant orally and in writing
prior to Appellant entering his open plea of guilty. See Tex.Code Crim.Proc.Ann. art.
26.13(a), (c), (d). Appellant signed a judicial confession to the charged offense and informed the
trial court that by his signature, he intended to admit that he committed the offense exactly as
alleging in the indictment. Appellant also indicated that he signed it because he was guilty and
for no other reason and had signed it freely and voluntarily. At the subsequent sentencing
hearing, Appellant apologized to the officer he hurt that day. He explained that he was just not
thinking and had entirely too much to drink that day. Appellant agreed that because of his
irresponsible acts, he actually injured someone. During cross-examination, Appellant did not
deny that acts were anything but intentional. Instead, he blamed his behavior on drinking too
much and taking medications, which left him totally incoherent. As for his specific behavior of
running at Officer Wilcox, ducking down, and lifting his shoulder to flip him over his back,
Appellant stated, "Ma'am, I was just scared. I was in the wrong. I apologize." Based on the
record before us, we conclude Appellant has not satisfied his burden of proving that he did not
understand the nature and consequences of his plea. Because the record shows that Appellant's
open plea of guilty was made voluntarily and freely, and that the evidence is sufficient to support
the trial court's finding of guilt, we overrule Appellant's sole issue for review.

 In a cross-point, the State requests that the judgment be reformed to reflect Appellant's
open guilty plea. The trial court's judgment reflects that Appellant pled guilty pursuant to a plea
bargain, however, the record should show that Appellant entered an open plea of guilty. We
agree with the State that the judgment should reflect that there was no plea bargain in this case
and that Appellant entered an open plea of guilty. This Court has the power to modify incorrect
judgments when we have the necessary data and information to do so. See Tex.R.App.P.
43.2(b); Bigley v. State, 865 S.W.2d 26, 27-8 (Tex.Crim.App. 1993); Asberry v. State, 813
S.W.2d 526, 529-30 (Tex.App.--Dallas 1991, pet. ref'd). Accordingly, we sustain the State's
cross-point and modify the trial court's judgment to reflect Appellant's open plea of guilty.

 We affirm the trial court's judgment as modified.


April 26, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)