ACCEPTED
05-14-01238-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
4/3/2015 5:28:36 PM
LISA MATZ
CLERK

*Oral Argument Not Requested.*

## NO. 05-14-01238-CR

IN THE COURT OF APPEALS
FOR THE FIFTH DISTRICT OF TEXAS
AT DALLAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
4/3/2015 5:28:36 PM
LISA MATZ
Clerk

**ROBERTO ARNOLDO MARTINEZ
a/k/a ROBERTO BARRIENTOS,
Appellant**

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
4/3/2015 5:28:36 PM
LISA MATZ
Clerk

**vs.**

**THE STATE OF TEXAS,
Appellee**

*On appeal from the Criminal District Court No. 3 of
Dallas County, Texas
Cause No. F14-00302-J*

## STATE'S BRIEF

| | |
|---|---|
| SUSAN HAWK | *Counsel of Record:* |
| *Criminal District Attorney* | LARISSA T. ROEDER |
| Dallas County, Texas | *Assistant District Attorney* |
| | State Bar No. 24010357 |
| | 133 N. Riverfront Blvd., LB-19 |
| | Dallas, Texas 75207-4399 |
| | (214) 653-3627 (*Phone*) |
| | (214) 653-3643 (*Fax*) |

*ATTORNEYS FOR THE STATE OF TEXAS*

# TABLE OF CONTENTS

STATEMENT OF THE CASE ............................................................................... 1

STATEMENT OF FACTS ................................................................................... 2

ARGUMENT...................................................................................................... 13

**Response to Issue One** ................................................................................... 13

THE TRIAL COURT PROPERLY EXERCISED ITS DISCRETION IN EXCLUDING SPECULATIVE TESTIMONY REGARDING INFORMATION KNOWN BY "MOST" HOMELESS SEX- OFFENDER REGISTRANTS................ 13

**Response to Issue Two**.................................................................................... 22

THE STATE OPPOSES APPELLANT'S REQUEST TO MODIFY THE JUDGMENT TO REFLECT APPELLANT WAS CONVICTED OF A LESSER DEGREE OF OFFENSE. ........................................................................... 22

**Response to Issue Three** ................................................................................ 26

THE JUDGMENT SHOULD BE MODIFIED TO CORRECTLY REFLECT "RICHARD CARRIZALES" AS APPELLANT'S TRIAL COUNSEL. ..................... 26

PRAYER ............................................................................................................ 27

CERTIFICATE OF SERVICE AND WORD-COUNT COMPLIANCE......................... 28

# INDEX OF AUTHORITIES

**Cases**

*Abron v. State*,
997 S.W.2d 281 (Tex. App.—Dallas 1998, pet. ref'd) ................................................. 26

*Asberry v. State*,
813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd) ................................................. 26

*Barrientos v. State*,
No. 05-12-00648-CR,
2013 Tex. App. LEXIS 7712 (Tex. App.—Dallas June 24, 2013, no pet.) (mem. op.,
not designated for publication) ................................................................................. 1, 22

*Barrientos v. State*,
Nos. 05-06-00675-CR & 05-06-00676-CR,
2007 Tex. App. LEXIS 3945 (Tex. App.—Dallas May 23, 2007 pet. ref'd) (mem. op.,
not designated for publication) ..................................................................................... 1

*Bigby v. State*,
892 S.W.2d 864 (Tex. Crim. App. 1994) ...................................................................... 17

*Bigley v. State*,
865 S.W.2d 26 (Tex. Crim. App. 1993) ........................................................................ 26

*Nolan v. State*,
39 S.W.3d 697 (Tex. App.—Houston [1st Dist.] 2001, no pet.) .................................. 26

*Osbourn v. State*,
92 S.W.3d 531 (Tex. Crim. App. 2002) ........................................................................ 18

*Ramos v. State*,
245 S.W.3d 410 (Tex. Crim. App. 2008) ...................................................................... 17

*Tillman v. State*,
354 S.W.3d 425 (Tex. Crim. App. 2011) ...................................................................... 17

*Turro v. State*,
950 S.W.2d 390 (Tex. App.—Fort Worth 1997, pet. ref'd) .......................................... 17

**Statutes**

Tex. Code Crim. Proc. Ann. art. 62.001(5)(A), (F) (West Supp. 2014) .......................... 24

Tex. Code Crim. Proc. Ann. art. 62.051 (West Supp. 2014) ............................................. 20

Tex. Code Crim. Proc. Ann. art. 62.053 (West Supp. 2014) ............................................. 19

Tex. Code Crim. Proc. Ann. art. 62.101(a) (West Supp. 2014) ........................................ 23

Tex. Code Crim. Proc. Ann. art. 62.101(a)(3) (West Supp. 2014) ......................... 3, 22, 23

Tex. Code Crim. Proc. Ann. art. 62.101(b) (West Supp. 2014 ........................................ 23

Tex. Code Crim. Proc. Ann. art. 62.101(c) (West Supp. 2014) ........................................ 23

Tex. Code Crim. Proc. Ann. art. 62.101(c)(2) (West Supp. 2014) .................................. 24

Tex. Code Crim. Proc. Ann. art. 62.102 (West Supp. 2014) ................................... 1, 20, 22

Tex. Code Crim. Proc. Ann. art. 62.102(a) (West Supp. 2014) ....................................... 23

Tex. Code Crim. Proc. Ann. art. 62.102(b) (West Supp. 2014) ....................................... 23

Tex. Penal Code Ann. § 21.08 (West 2011) ..................................................................... 22

Tex. Penal Code Ann. § 21.08(a) (West 2011) ................................................................. 24

Tex. Penal Code Ann. § 21.11(a)(2)(A) (West 2011) ................................................... 1, 24

**Rules**

Tex. R. App. P. 43.2(b) ....................................................................................... 13, 25, 26

Tex. R. App. P. 44.2(b) ............................................................................................. 19, 21

Tex. R. Evid. 602 ............................................................................................................ 17

Tex. R. Evid. 701 ............................................................................................................ 17

**TO THE HONORABLE COURT OF APPEALS:**

The State of Texas submits this brief in response to the brief of appellant, Roberto Arnoldo Martinez, a/k/a Roberto Barrientos.

## STATEMENT OF THE CASE

In 2006, a jury convicted appellant of two counts of indecency with a child by exposure and assessed punishment at four years' imprisonment in each case. *See* Tex. Penal Code Ann. § 21.11(a)(2)(A) (West 2011); *Barrientos v. State*, Nos. 05-06-00675-CR & 05-06-00676-CR, 2007 Tex. App. LEXIS 3945 (Tex. App.—Dallas May 23, 2007 pet. ref'd) (mem. op., not designated for publication). In 2012, a jury convicted appellant of failing to register as a sex offender and assessed punishment at 18 months' confinement in a state jail facility. *See* Tex. Code Crim. Proc. Ann. art. 62.102 (West Supp. 2014); *Barrientos v. State*, No. 05-12-00648-CR, 2013 Tex. App. LEXIS 7712 (Tex. App.—Dallas June 24, 2013, no pet.) (mem. op., not designated for publication).

In 2014, a grand jury issued an indictment charging appellant with the offense of failure to comply with registration requirements ("failure to register as a sex offender"), enhanced by the prior felony conviction for indecency with a child. (CR:7-8). *See* Tex. Code Crim. Proc. Ann. art. 62.102. At trial, the State abandoned the indecency enhancement paragraph and relied instead on appellant's 2012 conviction for failure to register as a sex offender as the enhancement

1

allegation. (CR:7-8; RR.3:19). The jury found appellant guilty, found the enhancement allegation to be true, and assessed punishment at seven years' imprisonment. (CR:42; RR.4:28-29). Appellant filed a motion for new trial, which the trial court overruled. (CR:43). Appellant timely filed a notice of appeal. (CR:33).

## STATEMENT OF FACTS

On June 18, 2011, Officer James Snyder was responsible for overseeing registered sex offenders for the city of Carrollton. (RR.3:30-31). Appellant was arrested for indecent exposure, which brought appellant to Snyder's attention as a person that might be subject to sex-offender registration. (RR.3:31-32, 127). Snyder checked appellant's criminal history and learned that appellant had a 2006 conviction for indecency with a child by exposure, a reportable offense. (RR.3:33). Snyder ordered court documents related to the offense and confirmed appellant's conviction. (RR.3:33). Snyder checked the Texas sex-offender database and learned that appellant was not registered. (RR.3:34). Snyder was unable to find any record that appellant had ever registered as a sex offender or that appellant had ever been notified of his duty to register. (RR.3:34).

On August 17, 2011, Snyder contacted appellant while appellant was serving time in the Carrollton jail on an unrelated seatbelt violation. (RR.3: 41). Snyder

informed appellant that he was required to register for life as a sex offender.[1] (RR.3:38-39). Appellant became upset and belligerent. (RR.3:38, 42-43). He insisted that he did not have to register and that no one had ever told him he had a duty to register. (RR.3:41-42). Snyder nevertheless spent twenty to thirty minutes with appellant going over and filling out the state-required sex offender registration forms. (RR.3:34-40; RR.5 State's Ex. 5).

Snyder photographed appellant and obtained appellant's fingerprints on the sex-offender registration/verification fingerprint card and appellant's thumbprint on both the pre-registration notification form and the sex-offender update form. (RR.3:37, 39; RR.5: State's Ex. 5). Appellant refused to sign the sex-offender registration documents. (RR.3:38, 43). The notation "Refused" or "Offender Refused to Sign" is noted on the registration forms in place of appellant's signature. (RR.3:38; RR.5: State's Ex. 5).

Snyder testified that his conversation with appellant and the registration forms were both in English. (RR.3:35). Appellant did not request or appear to need a translator. (RR.3:35-36). It appeared to Snyder, "[v]ery much so," that appellant understood their conversation. (RR.3:35-36).

---

[1] The offense for which appellant was convicted is subject to a 10-year registration period, unless appellant is convicted of another reportable offense before or after the conviction at issue. *See* Tex. Code Crim. Proc. Ann. art. 62.101(a)(3) (West Supp. 2014).

3

Snyder testified that he sent the original registration documents to the Texas Department of Public Safety (DPS) and that he handed appellant's copy of the completed forms to the jail staff. (RR.3: 39). Snyder insisted that he witnessed the jail staff place appellant's copy of the forms in appellant's locker. (RR.3:44-45). Appellant was released from jail the day following his meeting with Snyder. (RR.3:44).

On Tuesday May 28, 2013, at around 5:30 A.M., Richardson Patrol Officer Austin Reynolds was patrolling his normal route when he noticed an unfamiliar car in a church parking lot. (RR.3:50-51). Reynolds approached the car and contacted appellant, who appeared to have been sleeping inside. (RR.3:52, 62-63). When Reynolds asked appellant for identification, appellant handed Reynolds a Texas identification card with the name Roberto Barrientos. (RR.3:52-53). Reynolds ran a computer check on the name and received a sex-offender hit for Roberto Martinez with the alias name of Roberto Barrientos. (RR.3:53). The sex-offender hit was from the Carrollton Police Department. (RR.3:53). The hit listed the offender's address as "incarcerated." (RR.3:53).

Officer Reynolds asked appellant if he had ever been arrested and if he was required to register as a sex offender. (RR.3:66). Appellant told Reynolds he had only been arrested for a traffic violation and he denied having to register as a sex offender. (RR.3:66). Reynolds contacted the Carrollton Police Department and

4

requested a photograph of the person associated with the sex-offender hit. (RR.3:53). The photograph received by Reynolds confirmed appellant as the identified sex offender. (RR.3:54, 58; RR.5: State's Exs. 10, 11).

Reynolds asked appellant where he was living. (RR.3:54). Appellant said he had been living at 106 Dublin in Richardson, Texas, for approximately three months, but had recently been "kicked out" because he could not pay his rent. (RR.3:54). Appellant said he had a job scheduled for that day, he was waiting for the bus to take him to the job, and "once he got money back, he was planning to move back into 106 Dublin." (RR.3:54-55).

Reynolds had insufficient grounds at the time to arrest appellant. (RR.3:54, 56). Reynolds instead filled out an information report documenting their meeting so that a detective could conduct a follow-up investigation into whether appellant was committing a criminal offense related to his registration. (RR.3:54, 56, 63, 66-67).

Detective Jules Farmer conducted the follow-up investigation. (RR.3:69-70). Farmer confirmed that appellant had a 2006 conviction for indecency with a child and that appellant was required to register annually. (RR.3:70-71). Farmer determined that appellant had not registered with any agency in Texas since 2011. (RR.3:70-71). He determined that appellant had been released from jail in March

2013, and that as of June 3, 2013, appellant had not registered with Richardson or any other police department. (RR.3:71-72).

Farmer testified that he located a theft complaint filed by appellant around May 20, 2013, in which appellant listed 106 Dublin Drive as his place of residence. (RR.3:51, 73). Farmer confirmed that on May 28, 2013, appellant told Reynolds he had been living at 106 Dublin Drive before he was evicted. (RR.3:72-73). Farmer contacted Cheryl Miller, the homeowner of 106 Dublin Drive, who confirmed that appellant had been living at that address since March 2013. (RR.3:73-74). Miller provided Farmer with a copy of appellant's rent receipt dated May 29, 2013, the day following appellant's encounter with Reynolds. (RR.3:74, 132; State's Ex. 12).

In response to a question by the prosecutor, Farmer confirmed that the sex-offender registration statute includes provisions addressing registration for persons who are evicted or homeless. (RR.3:72-73). He testified that sex offenders are required to notify the local police department of the place they intend to call home, regardless of whether or not that place has a formal address, i.e., "living underneath the bridge at Collins and 75." (RR.3:72). He noted that registered sex offenders are required to notify the police department of any change in their status, including changes in their residence status. (RR.3:73). Farmer confirmed that a sex offender has a "7-day period" in which the offender is required to register his

6

location. (RR.3:74). Farmer testified that he obtained a warrant for appellant's arrest after he confirmed that appellant had been living at 106 Dublin for more than two months without registering his address as required. (RR.3:75).

On cross-examination, Farmer agreed that a sex offender's ability to register a physical location as opposed to a street address is a relatively new thing. (RR.3:76). Farmer noted that he learned about it from the 2011 legislative updates. (RR.3:77). When asked if a normal registrant who was homeless would be aware that he could register his location, Farmer replied, "I believe they're provided registration requirements upon their release from jail." (RR.3:77). When asked, "[W]ould most of those folks know that they could register under a bridge[,]" the prosecutor objected, "Calls for speculation;" the trial court sustained the objection. (RR.3:77-78).

Defense counsel next questioned Farmer about the complaint appellant filed regarding the theft of his backpack. (RR.3:78-79). Farmer confirmed that appellant identified a location other than the address he listed as his residence as the location where the theft occurred; Farmer did not recall if the theft location was a "mission." (RR.3:79). Farmer disagreed with defense counsel's claim that it

would be unusual for appellant to report a theft if appellant knew he was in violation of the law. [2] (RR.3:79-80).

Vincent Castilleja is the manager of the DPS Sex-Offender Registration Bureau. (RR.3:85). Castilleja confirmed that appellant last registered with DPS on August 17, 2011. (RR.3:85, 88). Castilleja testified that a registered sex offender has a continuing duty to report any status changes to the local law enforcement agency within seven days. (RR.3:88). He explained that when an offender is incarcerated, it is customary for the local law enforcement agency to report the offender's "status or address as incarcerated." (RR.3:88). Castilleja confirmed that once an "[offender] is released from incarceration, it is [the offender's] responsibility, within seven days, to update their address, their registration information." (RR.3:89). If the offender does not update his address, the sex-offender database will continue to show the person as incarcerated. (RR.3:89). Castilleja confirmed that appellant was not registered with any city or law enforcement agency between March of 2013 and June of 2013. (RR.3:89, 94).

The State rested its case in chief and appellant testified in his own defense. (RR.3:95, 106). Appellant identified himself as Roberto Barrientos Martinez.

_____

[2] After Farmer was excused, the court had the jury removed from the courtroom and admonished appellant to stop speaking out and to stop yelling while witnesses were testifying. (RR.3:82-83). Defense counsel noted that appellant's outbursts were disruptive and distracting. (RR.3:82-83).

8

(RR.3:106). Appellant confirmed that he was convicted of indecency with a child by exposure in 2006, but stated that he was wrongfully convicted and that he did not commit the offense. (RR.3:108). Appellant testified that he was not notified or given any sex-offender registration paperwork when he was released from jail in 2008 after serving the sentence on his 2006 conviction. (RR.3:108-09).

Appellant testified that in August 2011, he was serving time on a traffic ticket in the Carrollton city jail when Officer Snyder told him, "From now on, I want you to register as a sex offender," and "We all want you to register." (RR.3:110-11). Appellant said he was surprised and upset to hear that he was required to register as a sex offender. (RR.3:110, 112). Appellant told Snyder no one ever told him he had to register and his conviction was "wrongful." (RR.3:112). Appellant testified that Snyder did not meet with him for twenty minutes and that Snyder did not have all of the registration documents admitted at trial with Snyder when he met with appellant in jail. (RR.3:111-12).

Appellant claimed that his next contact with law enforcement was when Snyder came to the church where he was working and arrested him for failure to register as a sex offender. (RR.3:114). Appellant testified that Snyder never notified him or gave him papers telling him he had to register as a sex offender. (RR.3:114). Appellant insisted that when he was released from jail the day after

Snyder presented him with the paperwork, he did not receive any of the forms stating he was required to register as a sex offender. (RR.3:114).

Appellant confirmed that he was convicted of failure to register as a sex offender and claimed that he served nineteen months in jail on that conviction. (RR.3:115). Appellant testified that when he was released from jail after serving his sentence, no one told him or gave him any paperwork that informed him that he had to register as a sex offender. (RR.3:115).

In March 2013, after being released from jail on his 2011 conviction for failure to register as a sex offender, appellant moved into 106 Dublin in Richardson, Texas. (RR.3:116). Appellant explained that when Officer Reynolds found him in the church parking lot asleep in his car, he was having "difficulty renting" because he did not make enough money, but stated he wasn't homeless. (RR.3:120).

Appellant ultimately confirmed that he had two convictions for indecency with a child and one conviction for indecent exposure. (RR.3:126-27). Appellant confirmed that when Officer Snyder brought him the sex-offender registration forms in 2011, Snyder told him, "you've got to register or go to prison." (RR.3:129). When asked if he understood what Snyder told him, appellant said, "Yes," and "I never said that I didn't understand him." (RR.3:129).

Appellant confirmed that he was arrested and convicted by a jury of failing to register as a sex offender after Snyder told him he had to register as a sex offender. (RR.3:129-31). When asked, "Are you telling this jury you didn't know you had to register after you spent time in jail for not registering?" appellant replied, "I haven't been told . . . to be registered by the penal institution . . . ." (RR.3:131). Appellant said he did not go to the Richardson Police Department to inform them that he was living at 106 Dublin, even though he had just been released from serving time on his conviction for failure to register as a sex offender, because "I wasn't told again." (RR.3:132).

## SUMMARY OF ARGUMENT

Appellant presents three issues for review. In his first issue, appellant claims the trial court abused its discretion in sustaining the State's objection to Detective Farmer's testimony on information known to "most" homeless sex-offender registrants. The objected-to question improperly called for Farmer to speculate about what information the majority of a diverse population might or might not know. Since there is no evidence Farmer had personal knowledge of the requested information, the trial court properly exercised its discretion in sustaining the State's objection to the question, "If they live under a bridge . . . would most of those folks know that they could register under a bridge?" In the alternative, any possible error from the trial court's ruling limiting Farmer's testimony is harmless.

11

In his second issue, appellant asks this Court to modify the judgment to reflect that the offense for which he was convicted is a state jail felony offense. The State opposes appellant's request.

Appellant was convicted of indecent exposure under penal code section 21.08 in 2011. Appellant's 2011 conviction is a second conviction for a sexual exposure offense under Chapter 21; appellant's first conviction was his conviction for indecency with a child by exposure under penal code section 21.11(a)(2)(A) in 2006. A person subject to sex-offender registration as a result of an indecency with a child by exposure offense is subject to lifetime registration if the person has a second conviction for a reportable offense. A lifetime registration requirement increases the degree of offense for a failure to register as a sex offender conviction.

The State recognizes that under a literal reading of the statute, appellant's conviction for indecent exposure is not a second conviction under that code provision that would subject him to sex-offender registration. The State contends, however, that a literal reading of the statute would lead to an absurd result. The State would argue that appellant's indecent exposure conviction is a second sexual exposure conviction under Chapter 21, and thus, appellant's 2011 conviction should constitute a second reportable conviction subjecting appellant to lifetime registration on his indecency with a child conviction, and thereby elevating the degree of offense for appellant's current conviction for failure to register as a sex

offender.  For this reason, the State does not believe appellant is entitled to modification of the judgment on this issue under Rule 43.2(b) of the Texas Rules of Appellate Procedure.  .

In his third issue, appellant asks that the judgment be modified to properly identify his trial counsel.  The State agrees that the judgment should be modified to accurately identify "Richard Carrizales" as appellant's trial counsel.  The State respectfully prays that the judgment be modified to correct the identified clerical error and affirmed as modified.

## **ARGUMENT**

### **Response to Issue One**

THE TRIAL COURT PROPERLY EXERCISED ITS DISCRETION IN EXCLUDING SPECULATIVE TESTIMONY REGARDING INFORMATION KNOWN BY "MOST" HOMELESS SEX-OFFENDER REGISTRANTS.

Appellant claims that the trial court abused its discretion in sustaining the State's objection to the question, "If they live under a bridge . . . would most of those folks know that they could register under a bridge?"  Becasue there is no evidence Detective Farmer had personal knowledge of the requested information, the trial court properly sustained the State's objection.  Moreover, even if Farmer had sufficient knowledge to answer the question, any possible error in the court's limiting Farmer's testimony was harmless.

13

### Applicable Facts

Officer Reynolds discovered appellant sleeping inside a car in a church parking lot on May 28, 2013. (RR.3:51-53). Reynolds learned that appellant had been living at 106 Dublin, that he had recently been evicted because he couldn't pay his rent, and that he planned on moving back to 106 Dublin as soon as he had the money. (RR.3:54-55). Reynolds also learned that appellant had been previously registered as a sex offender and that appellant's residential status had not been updated since he was released from jail. (RR.3:53-54, 58). Reynolds generated an information report and the matter was turned over to Detective Farmer for further investigation. (RR.3:69-70).

During direct examination by the prosecutor, Farmer testified that appellant had a 2006 reportable conviction for indecency with a child, appellant was required to register as a sex offender, and appellant had not registered with any agency since 2011. (RR.3:70-71). Farmer testified that appellant was released from jail in March 2013, and that as of June 3, 2013, appellant had not registered his address with any police department. (RR.3:71-72). Farmer confirmed that on May 28, 2013, appellant told Reynolds he had been living at 106 Dublin Drive. (RR.3:72-73).

14

The prosecutor next asked Farmer if the registration statute has provisions that enable a person who is "kicked out or evicted or homeless" to register. (RR.3:72). Farmer testified as follows:

> If they can't find a homeless shelter that will accept them, then my understanding of the Code of Criminal Procedures [sic], they are to provide us an address; "they" being a registered sex offender.

> They are to provide the department with a physical location that they intend to call their house or their residence, where law enforcement can find them. They can tell us they're living underneath the bridge at Collins and 75; and so long as I can find them there, then that's where we can register them.

(RR.3:72). Farmer confirmed that a registered sex offender who suddenly becomes homeless or gets evicted is required to notify law enforcement of the change in his residence status. (RR.3:73).

On cross-examination, defense counsel engaged Farmer in the following exchange:

> [DEFENSE COUNSEL]: And this thing about - - the district attorney asked you about where people could register living under a bridge. You know, I live off of Riverfront and 35 or something under the - - you know, down the road or whatever. Really, that's kind of a new thing. Would you agree with me?

> [FARMER]: Yes, sir.

> [DEFENSE COUNSEL]: In other words, that's just kind of filtering down as we speak over the last six months; would you agree with me?

> [FARMER]: No, sir. I believe that was a legislative update maybe two legislative sessions ago.

15

[DEFENSE COUNSEL]:     2011. Yes, I saw that. But my question to you is this thing about people registering and living under a bridge and are homeless, that is a new thing that's starting to come out now. Would you agree with me? Not the law, but the awareness of it?

[FARMER]:     You mean an issue with the registrants?

[DEFENSE COUNSEL]:     No. The awareness that that's even a possibility.

[FARMER]:     I mean, I was aware of it when the legislative update came down in 2011.

[DEFENSE COUNSEL]:     Would a normal registrant, prisoner who is required to register, know that?

[FARMER]:     I believe they're provided - -

[DEFENSE COUNSEL]:     The homeless?

[FARMER]:     I believe they're provided registration requirements upon their release from jail.

[DEFENSE COUNSEL]:     **No, no. My question from the district attorney, would most of those folks know that they could register under a bridge?**

[PROSECUTOR]:     **Objection. Calls for speculation.**

THE COURT:     Objection sustained.

[DEFENSE COUNSEL]:     She asked you about people that are homeless. Was Mr. Martinez homeless or not homeless?

[FARMER]:     He had established a residence at 106 Dublin Drive.

(RR.3:76-78)(emphasis added).

16

### *Standard of Review*

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court does not abuse its discretion as long as its ruling is correct under any theory of law applicable to the case and its decision is within the zone of reasonable disagreement. *See Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

### *Applicable Law*

Rule 602 of the Texas Rules of Evidence provides that a witness may not testify to a matter unless there is sufficient evidence to show the witness has personal knowledge of the matter. Tex. R. Evid. 602. Rule 701 provides that a lay person may offer opinion testimony, limited to those opinions that are rationally based on the witness' perception and that are helpful to clarify understanding of the witness's testimony or the determination of a fact in issue. Tex. R. Evid. 701. The requirement of Rule 701 that the witness's testimony be based on the perception of the witness presumes that the witness either observed or experienced the underlying facts, thereby meeting the personal-knowledge requirement of Rule 602. *Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd) (citing *Bigby v. State*, 892 S.W.2d 864, 889 (Tex. Crim. App. 1994)). A witness's testimony admitted under Rule 701 "can include opinions, beliefs, or

inferences as long as they are drawn from his or her own experiences or observations." *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002).

### *Application of Law to the Facts*

Appellant contends that the trial court abused its discretion in limiting Farmer's testimony on information that homeless sex-offender registrants possessed regarding their duty to report a physical location as their place of residence. Appellant is incorrect.

The objected-to question required Farmer to speculate about information possessed by a diverse population defined by only two variables –homeless and sex offender. Even as the person in charge of the city's sex offender registrants, nothing in the record shows that Farmer had personal knowledge of whether "most" of the homeless sex-offender population knew or did not know they could report a physical location as their place of residence.

In attempting to bring the objected-to question into Detective Farmer's sphere of personal knowledge, appellant reinterprets the question as follows:

> The question was not whether Farmer knew how appellant would have known this information. **Rather, the question solicited information as to how any person required to register as a sex offender would have notice about registering a geographical or physical address if the person were homeless.**

(Appellant's Br. 13) (emphasis added). Farmer already answered this question when he stated, "I believe they're provided registration requirements upon their

18

release from jail." (RR.3:77). Farmer's answer is supported by the document "Pre-Release Notification Form Texas Sex Offender Registration Program," which was admitted into evidence as part of State's Exhibit 5. This particular form, which is signed by Snyder and bears appellant's thumbprint, reflects that the form is provided to offenders upon "Release or Discharge from a Penal Institution or Release to Community Supervision, Parole, Mandatory Supervision or the Law Enforcement Registering Authority" in accordance with Tex. Code Crim. Proc. Ann. art. 62.053 (West Supp. 2014). This form includes a specific provision notifying offenders of their duty to report their "Lack of Address" to law enforcement authorities. The provision states:

> If I lack a physical address assigned by a governmental entity, I must provide to the local law enforcement authority a detailed description of the geographical location where I reside or intend to reside for more than 7 days. I must report in person to the local law enforcement authority not less than once in each 30 day period to confirm my location until a physical address can be provided.

(RR.5: State's Ex. 5). The record reflects that Farmer answered the questions on which he had personal knowledge, and that the trial court properly sustained the State's objection to the question upon which his answer would have been merely speculation.

Moreover, even if this Court should find the trial court abused its discretion in limiting Farmer's testimony, any possible error is harmless. *See* Tex. R. App. P. 44.2(b). The sole issue in this case is whether appellant intentionally, knowingly,

19

or recklessly failed to comply with the Chapter 62 sex-offender registration and verification requirements. To convict appellant the jury had to find appellant, intentionally, knowingly, or recklessly:

1. failed to appear in person and provide the Richardson Police Department with proof of appellant's identity and new residence, not later than the seventh day after appellant changed address; or

2. failed to register or verify registration with the Richardson Police Department within seven days of appellant's release from the state jail facility; or

3. failed to report in person to the Richardson Police Department that appellant had been evicted or was no longer residing at 106 Dublin Drive.

(CR:9-10, 20-29). Tex. Code Crim. Proc. Ann. arts. 62.051, 62.102 (West Supp. 2014).

The evidence established that on August 17, 2011, Officer Snyder notified appellant of his duty to register as a sex offender. Snyder filled out and went over the sex-offender registration forms with appellant while appellant was serving time on a ticket in the Carrollton jail. Appellant was released from jail the following day and did not report to his local law enforcement agency as required. Appellant was subsequently convicted of failure to register as a sex offender and sentenced to eighteen months in a state jail facility.

Appellant was released from the state jail facility in March 2013. Appellant moved into and lived at #106 Dublin Drive for approximately three months.

Around May 20, 2013, appellant filed a theft complaint in which he listed 106 Dublin Drive as his place of residence. On May 28, 2013, appellant was found sleeping in his truck after having been evicted from 106 Dublin for non-payment of rent. On May 29, 2013 appellant again paid rent for his room at 106 Dublin Drive.

Appellant did not report, verify, or register any address with the Richardson Police Department at any time from the day he was released from the state jail facility in March 2013, through June 3, 2013. Appellant did not report his address within seven days of moving into 106 Dublin Drive, he did not report his address within seven days of being released from the state jail facility, and he did not appear in person at the Richardson Police Department to report that he had been evicted from 106 Dublin Drive. The evidence overwhelmingly establishes appellant's failure to comply with the sex-offender registration reporting requirements. As such, any possible error in the exclusion of this requested information is harmless. *See* Tex. R. App. P. 44.2(b).

For all of the above reasons, this Court should overrule appellant's first issue on appeal.

**Response to Issue Two**

THE STATE OPPOSES APPELLANT'S REQUEST TO MODIFY
THE JUDGMENT TO REFLECT APPELLANT WAS CONVICTED
OF A LESSER DEGREE OF OFFENSE.

Appellant asks this Court to modify the judgment to reflect that he was
convicted of a state jail offense. The State opposes appellant's request.

### *Applicable Facts*

- Appellant was convicted of two offenses of indecency with a child by
  exposure in 2006. Tex. Penal Code Ann. § 21.11(a)(2)(A) (West
  Supp. 2014). Appellant's convictions originally carried a 10-year
  registration requirement. Tex. Code Crim. Proc. Ann. art.
  62.101(a)(3).

- On June 9, 2011, appellant committed a new offense of indecent
  exposure. *See* Tex. Penal Code Ann. § 21.08 (West 2011).

- On August 31, 2011, appellant committed the offense of failure to
  register as a sex offender. *See* Tex. Code Crim. Proc. Ann. art.
  62.102.

- On August 31, 2011, appellant was convicted of failing to register as a
  sex offender. In this Court's opinion affirming appellant's conviction,
  this Court recognized appellant's ten-year registration requirement.
  *Barrientos*, 2013 Tex. App. LEXIS 7712, at *10.

- On June 12, 2012, appellant was convicted of the 2011 indecent
  exposure offense.

During appellant's trial for the instant failure to register offense, the State
introduced certified copies of the judgments in appellant's indecency with a child
convictions and appellant's indecent exposure conviction. Appellant testified
during guilt and confirmed his convictions in all three cases.

22

*Applicable Law*

Article 62.102 delineates three different degrees of offenses under Chapter 62. *See* Tex. Code Crim. Proc. Ann. art. 62.102(a). Article 62.102 provides that an offense under Chapter 62 is a state jail felony if the person's duty to register expires under Article 62.101(b) or (c); a third degree felony if the person is subject to lifetime registration with annual verification requirement; and a second degree felony if the person is subject to lifetime registration with a 90-day verification requirement. *See* Tex. Code Crim. Proc. Ann. arts. 62.101(a)-(c); 62.102(b) (West Supp. 2014).

Article 62.101(a) provides in relevant part that a person's duty to register as a sex offender ends when the person dies if the person has a reportable conviction or adjudication for an offense under penal code section 21.11(a)(2), "if before or after the person is convicted or adjudicated for the offense . . . the person receives or has received another reportable conviction . . . for an offense or conduct that requires registration under this chapter." Tex. Code Crim. Proc. Ann. art. 62.101(a)(3) (West Supp. 2014). Article 62.101(c) provides:

> (c) Except as provided by Subchapter I, the duty to register for a person with a reportable conviction or adjudication for an offense *other than an offense described by Subsection (a)* ends:
>
> . . .
>
> (2) if the person's duty to register is based on a conviction . . ., on the 10th anniversary of the date on which the court dismisses the criminal proceedings against the person and discharges the person,

23

the person is released from a penal institution, or the person discharges community supervision, whichever date is later.

Tex. Code Crim. Proc. Ann. art. 62.101(c)(2). A reportable conviction under Article 62.001 includes: "(A) a violation of Section . . . 21.11 (indecency with a child)," and "(F) the second violation of Section 21.08 (Indecent exposure), Penal Code, but not if the second violation results in a deferred adjudication." Tex. Code Crim. Proc. Ann. art. 62.001(5)(A), (F) (West Supp. 2014).

Penal code section 21.11 provides:

(a) A person commits an offense if, with a child younger than 17 years of age, . . . the person:

(2) with intent to arouse or gratify the sexual desire of any person:

(A) exposes the person's anus or any part of the person's genitals, knowing the child is present[.]

Tex. Penal Code Ann. § 21.11(a)(2)(A). Penal code section 21.08 similarly provides:

(a) A person commits an offense if he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act.

Tex. Penal Code Ann. § 21.08(a) (West 2011).

### *Application of Law to Facts*

Whether appellant is subject to lifetime registration and thus convicted of a higher degree of offense depends on whether appellant's 2011 indecent exposure

conviction is considered a second conviction for indecent exposure and thus, a reportable offense. In the context of registration requirements, it seems absurd that a person convicted of indecency with a child by exposure, who is subsequently convicted of indecent exposure can avail himself of the ten-year registration provision even though he committed a second sexual exposure offense. A person's second conviction for the misdemeanor offense of indecent exposure is a reportable conviction. Where a person is convicted first of the felony offense of indecency with a child by exposure and later convicted of indecent exposure, the indecent exposure offense should logically be a reportable conviction. The State acknowledges that a conviction for indecency with a child by exposure is, on its own, a reportable conviction. The conviction, however, is subject to only a ten-year reporting period unless the person has another reportable conviction. Appellant should not be able to avail himself of the shorter reporting period simply because his first sexual exposure offense was a felony.

Appellant notes in his brief that this Court previously recognized that appellant was subject to the 10-year registration period. At the time of appellant was convicted of the failure to register as a sex offender, he had not yet been convicted in the indecent exposure case. The State disagrees with appellant's claim that the third-degree felony offense designation is a clerical error subject to correction under Tex. R. App. P. 43.2(b). A modification of the judgment on this

issue would require judicial reasoning, and thus, is not appropriate for clerical correction. The State respectfully requests this Court deny appellant's request to modify the court's judgment to reflect appellant's conviction on lower degree of offense and overrule appellant's second issue on appeal.

**Response to Issue Three**

> THE JUDGMENT SHOULD BE MODIFIED TO CORRECTLY REFLECT "RICHARD CARRIZALES" AS APPELLANT'S TRIAL COUNSEL.

The State agrees that the judgment should be modified to accurately identify appellant's trial counsel as Richard Carrizales.

*Applicable Law*

Where the record contains the necessary information to do so, the court on appeal has the authority to modify incorrect judgments. Tex. R. App. P. 43.2 (b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Abron v. State*, 997 S.W.2d 281, 282 (Tex. App.—Dallas 1998, pet. ref'd). "An appellate court has the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and nature of the case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)).

The judgment identifies the "Attorney for Defendant" as Kenneth Weatherspoon. The record reflects that appellant was represented at trial by "Richard Carrizales." (CR:6, 7, 16; RR.1:2; RR.3:2, 7). Because this Court has the information to do so, the State respectfully joins in appellant's request that the judgment be modified to correctly reflect Richard Carrizales as appellant's trial counsel.

## PRAYER

The State prays this Honorable Court will affirm the judgment of the trial court as modified.

Respectfully submitted,

SUSAN HAWK
*Criminal District Attorney*
State Bar No. 00791886
Dallas County, Texas

LARISSA T. ROEDER
*Assistant District Attorney*
State Bar No. 24010357
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3627 (phone)
(214) 653-3643 (fax)
larissa.roeder@dallascounty.org

27

## CERTIFICATE OF SERVICE AND WORD-COUNT COMPLIANCE

A copy of this brief has been served on Assistant Public Defender Julie Woods, attorney for appellant, via electronic service at Julie.Woods@dallascounty.org on April 3, 2015. I further certify that this document contains 6,451 words, inclusive of all contents.

Larissa T. Roeder