

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-18-00380-CR
_____

RICCO RUBEN GRANADOZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 100th District Court
Collingsworth County, Texas
Trial Court No. 3020; Honorable Stuart Messer, Presiding

May 17, 2019

MEMORANDUM OPINION

Before CAMPBELL, PIRTLE, and PARKER, JJ.

In January 2018, pursuant to a plea bargain, Appellant, Ricco Ruben Granadoz, was placed on deferred adjudication community supervision for three years and assessed

a $3,000 fine for the offense of assault family violence.[1] Six months later, the State moved to revoke Appellant's community supervision and adjudicate him guilty of the original offense for committing multiple violations of the terms and conditions of his community supervision, including committing various new offenses. At a hearing on the State's motion, the State waived all but one of the allegations alleged in its motion to adjudicate—committing the new offense of escape. Appellant entered a plea of not true to the allegation. At the conclusion of the testimony, the trial court found that Appellant had violated his community supervision by committing the felony offense of escape. Appellant was adjudicated guilty of assault family violence and sentenced to seven years confinement. By a sole issue, Appellant asserts the evidence was insufficient to establish that he committed the offense of escape when the underlying stop and frisk was unlawful. We affirm.

### BACKGROUND

Appellant and the victim of the assault considered themselves married. They have four children. In August 2017, when the victim was at her mother's house, Appellant showed up, pushed the door open, shoved the victim and her infant son, and began choking her. He then grabbed her purse and took money from it. That incident resulted in Appellant being placed on deferred adjudication community supervision for assault family violence.

---

[1] TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West 2019). The offense is elevated to a third degree felony when the perpetrator and the victim of the assault are the parents of the same child, without regard to marriage. *Id.*

During the afternoon hours of June 28, 2018, the Collingsworth County Sheriff, who was familiar with Appellant, was on patrol when he received a dispatch call that Appellant was at an assisted living facility looking for his wife.[2] Shortly thereafter, the sheriff observed Appellant walking on the sidewalk in front of the facility and made a U-turn to make contact with him. The sheriff stopped his patrol vehicle, exited, and asked Appellant to drop his backpack which had a baseball bat protruding from it. As directed by the sheriff, Appellant placed his hands on the hood of the vehicle for a pat-down search.

During the pat-down search, Appellant grabbed an eyeglass case from his back pocket and threw it across a parking lot while shouting, "this shit is not mine." A glass pipe of the type used for illicit drugs fell from the case and broke on the concrete. Appellant was arrested for tampering with evidence and handcuffed behind his back. He was placed in the front seat of the patrol vehicle.

As the sheriff proceeded to gather the broken glass pipe as evidence, Appellant exited the patrol vehicle and ran down an alley. The sheriff was alerted to Appellant's flight by a passer-by. The sheriff quickly gathered the remainder of the broken glass pipe and then found Appellant. The sheriff rolled down the window of his patrol vehicle and directed Appellant to stop. Appellant complied. He was then transported to jail and charged with various offenses related to the incident.[3]

---

[2] There is nothing in the record to show the reason for her presence at the facility.

[3] Based on numerous objections by defense counsel, some of which were sustained, the trial court indicated that any hearsay testimony related to charges that the State waived would not be considered as violations of the terms and conditions of community supervision and would not be considered as evidence of the escape charge.

**STANDARD OF REVIEW**

When reviewing an order revoking community supervision imposed under an order of deferred adjudication, the sole question before this court is whether the trial court abused its discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated a condition of community supervision as alleged in the motion to revoke. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). In the context of a revocation of community supervision, "a preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his [community supervision]." *Hacker*, 389 S.W.3d at 865 (citing *Rickels*, 202 S.W.3d at 764). In that context, the trial court abuses its discretion in revoking community supervision if, as to every ground alleged, the State fails to meet its burden of proof. *Cardona v. State*, 665 S.W.2d 492, 494 (Tex. Crim. App. 1984). In determining the sufficiency of the evidence to sustain a revocation, we view the evidence in the light most favorable to the trial court's ruling. *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979). The finding of a single violation of community supervision is sufficient to support revocation. *See Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980) (finding that the single violation of failing to report was sufficient to support revocation and pretermitted consideration of other contentions).

**ANALYSIS**

Appellant contends "the evidence was legally insufficient to establish that he violated the terms of his community supervision by allegedly committing the offense of

4

escape when the evidence underlying the stop and frisk was legally insufficient." The following exchange during the sheriff's direct examination is relevant to resolution of Appellant's issue:

Q.      And did you have occasion to come into contact with the Defendant, Mr. Ricco Ruben Granadoz?

A.      Yes, I did.

Q.      And would you please explain how that contact was initiated? How did it start?

A.      I got a call from dispatch at right around 1:30 p.m. that Mr. Granadoz was at the assisted living --

[Defense counsel]: Objection, Judge, to hearsay.

[Prosecutor]: It's not for the truth of the matter asserted, Your Honor. It's to show the effect on the witness, and why he did what he did.

THE COURT: Overruled.

* * *

WITNESS:   I received a call from dispatch saying that Mr. Granadoz was at the assisted living trying to find his wife, and he was raising [C]ain and yelling, searching for her, and they were afraid he was going to beat her up.

[Defense counsel]: Objection, Judge, hearsay upon hearsay. Move to strike.

THE COURT: He received a phone call from dispatch to do something is one thing, but as to the facts of what was going on, I am going to sustain the objection.

Later in the sheriff's testimony when he was describing how he became aware that Appellant had escaped custody, the following exchange occurred:

A.      As I was picking [the broken pipe] up, a lady drove by and stopped, and she said, hey, did you have somebody in your car? And I said, yes. And she said, well, he's running down the alley to the --

[Defense counsel]: I object. That's hearsay.

5

THE COURT:  Sustained as to hearsay.

* * *

THE COURT:  Okay.  I will not consider it as evidence of escape.  I will only consider it for motivation of why the witness did whatever he does next.

After the sheriff concluded his testimony, the State rested, and defense counsel moved for a directed verdict.  He argued that based on the trial court having sustained some of his objections, there was no evidence of the dispatch call and therefore no reasonable suspicion to detain him.  He maintained that under the Fourth Amendment, he was subjected to an unreasonable search and seizure which resulted in a lack of evidence to prove that he escaped from custody.

The State responded that the sheriff had probable cause to detain Appellant based on the dispatch call which advised that the person who called law enforcement was concerned about Appellant being at the facility where his wife was present.  The trial court asked the court reporter to read back the above-quoted relevant testimony, after which the motion for directed verdict was denied.[4]

In presenting his issue here, Appellant maintains the sheriff lacked probable cause to stop, detain, and arrest him.  The unlawfulness of the sheriff's conduct, he contends, invalidated any proof that he violated the terms and conditions of his community supervision by committing the new offense of escape.  He frames his issue as a challenge to the legal sufficiency of the evidence to support the detention and subsequent arrest.

---

[4] During the hearing, the trial court commented to defense counsel that "hearsay isn't a real good objection in a Motion to Suppress."  Defense counsel noted he was not urging a motion to suppress after which the trial court announced, "I am taking this as a Motion to Suppress . . . ."  Moments later, defense counsel did make a "14th Amendment due process objection" which the trial court overruled.

Appellant presents the same argument he did at the adjudication hearing—"due to the Court sustaining the objection to the [phone call from the facility to the dispatcher], there was no evidence of reasonable suspicion to even detain Appellant." Appellant's argument misinterprets the trial court's ruling as initially excluding all testimony regarding the dispatch call to the sheriff and later allowing testimony regarding the information given by the dispatcher to the sheriff. We interpret it differently. The trial court specifically ruled that the sheriff receiving a phone call from the dispatcher "to do something" was one thing but "as to the facts of what was going on, I am going to sustain the objection." Our interpretation of the trial court's ruling indicates it was allowing testimony from the sheriff that he was dispatched to the facility regarding an incident where Appellant was looking for his wife, and that he was "raising [C]ain and yelling, searching for her," but that he was otherwise excluding testimony regarding the fact that the caller was afraid that Appellant was "going to beat her up."

Appellant also complains that the trial court improperly considered testimony it had previously excluded. Specifically, he argues the trial court considered Appellant discarding the eyeglass case which contained a glass pipe used for illicit drugs and his possession of a baseball bat as "reasonable suspicion to at least talk to [Appellant] in a brief stop." In its ruling, the trial court announced that "people were in fear of [Appellant]" who possessed a baseball bat as justifying his detention.[5] The trial court did not exclude testimony concerning the sheriff's personal observations, including the fact that Appellant did have a baseball bat protruding from his backpack and he suspiciously discarded what

---

[5] Assuming the trial court erroneously considered some of the testimony it had previously excluded, in light of our analysis, we find the error to be harmless. Tex. R. App. P. 44.2(b).

later proved to be incriminating evidence. Based on his misinterpretation of what evidence the trial court actually excluded, Appellant mistakenly concludes that any evidence pertaining to what occurred after the unlawful stop and frisk, i.e., the escape,[6] should have been excluded and the trial court abused its discretion in ruling otherwise.

Furthermore, Appellant's challenge to the lawfulness of his detention and arrest is irrelevant as a defense to the offense of escape. Section 38.08 of the Texas Penal Code provides "[i]t is no defense under Section 38.06 [escape] . . . that the custody was unlawful." TEX. PENAL CODE ANN. § 38.08 (West 2016). This is so because a detained individual has the duty to submit to an otherwise lawful arrest in order to maintain public order. This court noted in *Martinez v. State*, No. 07-03-0407-CR, 2005 Tex. App. LEXIS 8398, at *7 (Tex. App.—Amarillo 2005, no pet.) (mem. op., not designated for publication), that a challenge to the legality of an arrest makes section 38.08 applicable when a defendant is charged with the felony offense of escape.

Appellant was charged with the criminal offense of escape which was a violation of the term of his community supervision that he commit no offense against the laws of this State, or any other State, or of the United States. His complaint on appeal that evidence supporting the charge of escape should not have been considered because his detention and arrest were unlawful has no merit.

Appellant was on deferred adjudication for assaulting his wife. The sheriff received a dispatch that Appellant was looking for his wife at an assisted living facility and the

---

[6] A person commits the offense of escape if he escapes from custody when he is under arrest for an offense. TEX. PENAL CODE ANN. § 38.06(a)(1) (West 2016).

sheriff observed him carrying a baseball bat in his backpack. No witnesses for the defense dispute the sheriff's testimony.

Even excluding the sheriff's hearsay testimony about the caller's suspicions as to Appellant's intent or the statements of the woman who drove by and advised him that his prisoner had fled, a preponderance of the evidence established that Appellant escaped from custody—he knowingly or intentionally left the patrol vehicle after being arrested and he attempted to run away. Under these facts, we conclude the trial court did not abuse its discretion in finding the State's allegation to be true, in adjudicating Appellant guilty of the original charge of assault family violence, and in sentencing him to seven years confinement. Appellant's sole issue is overruled.

### REFORMATION OF JUDGMENT

In reviewing the record, it has come to this court's attention that the trial court's judgment contained in the clerk's record includes a clerical error. The summary portion of the judgment under "Statute for Offense" reflects that Appellant was convicted under "§ 21.01." However, assault family violence is found at section 22.01(b)(2)(B) of the Texas Penal Code.

This court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b). *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). The

9

power to reform a judgment is "not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* at 529-30.  Thus, we modify the trial court's judgment to reflect the "<u>Statute for Offense</u>" as "§ 21.02(b)(2)(B)" in the summary portion of the judgment.  As modified, the trial court's judgment is affirmed.

**CONCLUSION**

The trial court's judgment is affirmed as reformed.


Patrick A. Pirtle
Justice


Do not publish.