

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00342-CR

AUTRY MADISON CAMPOS-DOWD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 47th District Court
Randall County, Texas
Trial Court No. 27,753-A, Honorable Dan L. Schaap, Presiding

June 9, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Autry Madison Campos-Dowd, appeals from the order revoking his community supervision. In a single issue, he contends the State did not overcome the resumption of self-defense after evidence of self-defense was established. We affirm.

*Background*

In June of 2017, appellant was indicted for organized criminal activity for money laundering of funds $300,000 or more pursuant to Texas Penal Code § 71.02 (a)(10). On January 31, 2019, appellant pled guilty to a "lesser included offense of engag[ing] in

organized criminal activity." The trial court found him guilty and entered a judgment of conviction. So too did the trial court sentence appellant to 10 years in prison. The sentence was suspended, and that trial court placed appellant on community supervision (probation) for seven years.

Subsequently, the State filed a motion to revoke appellant's probation. In it the State alleged that appellant had committed a new offense, that is, assault. A contested hearing ensued.

At the hearing, Edward Bishop, a tow truck driver, testified that appellant came to the towing company's place of business on December 30, 2019, to get a car out of impound. The time was about 2 a.m. Bishop and a co-worker, Aaron Smith, took appellant to his car. When they reached it, appellant began using profanity towards them and threatened to drive the car through the fence. Appellant entered the vehicle and drove at the two men. They succeeded in avoiding him. Appellant then drove to the office, entered the office, and left it within short order. By that time, Bishop and Smith neared the office and split their respective line of travel in two directions. Apparently, Bishop chose to walk behind other vehicles at the office while Smith walked in front of them. Appellant and Bishop approached each other. Words were exchanged, resulting in appellant striking Bishop in the face twice "bust[ing] his lip," injuring his nose, and causing him pain. Bishop stated that appellant was intoxicated during this event.

During cross examination, Bishop admitted to putting his fists up as the two approached each other. He took that stance, though, because appellant threatened him. As Bishop attempted to "talk him down," appellant struck Bishop in the face. Smith then

placed himself between the two. Nevertheless, appellant attempted to continue hitting Bishop. Eventually, police arrived and arrested appellant.

According to the arresting officer, he encountered appellant who immediately tried to explain what happened. During this dialogue, appellant said nothing about a fight or that he had hit someone. The officer then spoke with Bishop and Smith. So too did he view the surveillance video capturing the incident. He was able to discern that appellant threw the first punch. He also observed an injury on Bishop and smelled the strong odor of alcohol coming from appellant.

The last piece of evidence the State introduced was the surveillance video. In it, appellant is shown driving up to the office, exiting the car, and entering the building. Upon leaving the building, appellant walked towards the driver side of his car, went around the rear of it, and approached Bishop as he and Smith returned to the office. Bishop appears to be backing up when appellant began hitting him. Smith tried to intervene, without success. Eventually, all parties entered the building.[1]

Appellant's defense consisted of him testifying. He stated that he appeared at the towing company to acquire his mother's car, met with Bishop and Smith at the front office, and paid the towing fee. Smith and Bishop then escorted him to the vehicle. Appellant agreed with Bishop's testimony up to the point he supposedly started using profanity. That, he denied. He also denied threatening to run them over, attempting to run them over, and or threatening to drive through the fence. He did testify to driving to the back door of the office, entering it, exiting it, walking to his car, and being approached by

_____

[1] The State's exhibit, further, contains an exhibit as Defense Exhibit 1 which contains the same surveillance footage except a few seconds at the beginning has been added. The additional footage depicts appellant's car driving up to the back door as opposed to the State's exhibit which depicts the car already at the back door.

Bishop. The latter allegedly began screaming about appellant's purported effort to run him over. Bishop also uttered a racial slur at appellant, so said appellant. That purportedly resulted in him approaching Bishop, Bishop raising his fists, and Smith "circling around" behind him. Appellant said his survival instincts took over and believed the force he used was immediately necessary to protect himself.

Appellant denied being intoxicated and disputed the accuracy of the officer's reference to him smelling of alcohol. He also acknowledged that: 1) no one was behind him when he struck at Bishop; 2) he made no effort to enter his vehicle or leave before striking Bishop; 3) he was angry and felt disrespected; and 4) he walked towards Bishop instead of away from him.

Based upon the evidence of record, the trial court found true the State's allegation that appellant engaged in an assault. Thus, it revoked appellant's community supervision and sentenced him to prison.

*Issue – Self Defense*

Appellant contends in his sole issue that the trial court erred in revoking his probation. Allegedly, the State failed to overcome his affirmative defense of self-defense beyond a reasonable doubt. The issue is overruled.

We review the trial court's decision to revoke one's probation for an abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). Determining whether discretion was abused obligates us to decide if the State proved, by a preponderance of the evidence, that appellant violated his probation. *Id.* When making this determination, we must remember that the trial court is the sole trier of fact; it has the authority to assess a witness's credibility and assign whatever weight to give his

4

testimony.  *Id.*  It may accept or reject any or all of it.  *See Busby v. State*, No. 07-20-00001-CR, 2021 Tex. App. LEXIS 1891, at \*5 (Tex. App.—Amarillo Mar. 11, 2021, no pet.) (mem. op.).  That said, we return to the evidentiary record.

The fact of an assault was and is not disputed.  Whether the assault was justified is in play, however.  Again, appellant merely contends that the evidence established he acted in self-defense.  On claiming self-defense, the accused is required to show that he was "justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *See* TEX. PENAL CODE ANN. § 9.31 (West Supp. 2020).  The evidence before the trial court conflicted.  Bishop described appellant as the aggressor.  Appellant described Bishop as the aggressor.  Appellant admitted to seeing Bishop approach, hearing a purported racial slur, growing angry, feeling offended and disrespected, walking towards Bishop and striking Bishop first.  *See id.* § 9.31(b)(1) (stating that the use of force is not justified in response to verbal provocation alone).  He also acknowledged forgoing opportunity to avoid the conflict.

The trial court's task was to select what to believe and who was credible.  In revoking appellant's community supervision, it implicitly rejected appellant's testimony and claim of self-defense.  Appellant's own testimony could be reasonably construed as revealing that he reacted to verbal provocation alone, which negates his entitlement to the justification of self-defense.  Thus, evidence appears of record supporting the trial court's decision, and we must defer to it.

However, we note that in the trial court's "Bill of Costs," appellant was assessed a "Time Payment Fee" in the amount of $25.00.  Recently, the Court of Criminal Appeals

5

issued an opinion concluding that a trial court's assessment of the $25 time-payment fee while an appeal is pending is premature. *Dulin v. State*, __ S.W.3d __, __, 2021 Tex. Crim. App. LEXIS 273, at *11 (Tex. Crim. App. Mar. 31, 2021) (holding that '[t]he pendency of an appeal stops the clock for purposes of the time payment fee"). Therefore, the $25 time-payment fee is premature in the case before us and should be "struck in [its] entirety, without prejudice to [the fee] being assessed later if, more than 30 days after the issuance of the appellate mandate, [appellant] has failed to completely pay any fine, court costs, or restitution that he owes." *Id.*

This court has the authority to modify an incorrect judgment when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the bill of costs to delete the assessment of the $25 time-payment fee.

Accordingly, the trial court's judgment is affirmed.


Per Curiam

6