**Affirmed as Modified and Opinion Filed June 15, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-01016-CR**

**STEVEN DANIELS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-2100336-U**

# MEMORANDUM OPINION

Before Chief Justice Burns, Justice Nowell, and Justice Smith
Opinion by Chief Justice Burns

A jury convicted Steven Daniels of capital murder; specifically, murder in the course of committing or attempting to commit retaliation. Daniels appeals the trial court's final judgment, which assessed his punishment at life imprisonment. In his sole issue on appeal, Daniels argues the evidence is insufficient to support his conviction. In a cross-issue, the State requests that this Court modify the judgment to reflect the correct charged offense. We conclude the evidence is sufficient to support Daniels's conviction. We sustain the State's cross issue and modify the

judgment to reflect the correct charged offense. The trial court's final judgment is affirmed as modified.

## I. EVIDENCE AT TRIAL

Viewed under the appropriate standard, the evidence at trial shows as follows. Daniels was in a long-term dating relationship with Tequilla Stroye, the mother of Jamilia Stroye, the victim. Daniels was not Jamilia's father. They lived together, and after a few years Daniels and Tequilla had a child together. Around this time, when Jamilia was fifteen years old, Daniels "did something to her while she was asleep." As a result, Jamilia moved out, to live with her aunt, Pearlie Stephens. Jamilia lived with Pearlie from the time she was fifteen years old until she was twenty-two years old. Jamilia was estranged from her mother, Tequilla.

In 2019, Jamilia began dating Brandon Jones. They eventually became engaged and resided together along with Jamilia's son and Brandon's two daughters. Brandon encouraged Jamilia to reconcile with her mother, and from time to time they visited the apartment her mother shared with Daniels for barbeques and drinks.

On May 29, 2020, Jamilia, Brandon, and their children went to Daniels's and Tequilla's apartment for a cookout and family gathering. Pearlie and Iris Sanders were also there. A few hours into the gathering, Jamilia was sitting in a chair that faced the front door of the home. The children were nearby, sitting at a table. Jamilia observed Daniels masturbating on the patio and recorded what she saw on her cellular phone.

Jamilia showed the video to Tequilla. Both mother and daughter were upset and they confronted Daniels. Daniels apologized and said he was leaving and going back to Texarkana, where he was from. Then Jamilia found Brandon and, in an angry demeanor, told him they needed to leave. Jamilia, Brandon, and the children left the gathering and went home.

Once they were parked at their apartment, Jamilia showed Brandon the recording and he was also angered by what Daniels had done. Brandon sent the recording to his phone. Jamilia and the children went inside their home, and she called the police. Meanwhile, Daniels told Tequilla that he was going home to Texarkana; he took clothing to his car, and he drove away from the apartment complex parking lot. Tequilla stated that Daniels was "acting like a man who knew the police were on their way." After he left, Daniels spoke with Tequilla on the phone and told her that, if the video were to get out, he would lose his job and his life would be over. He also stated that, if Jamilia called the police, he would go to jail.

Brandon went back to Tequilla's and Daniels's home to confront him. Daniels was not there, but drove back within a few minutes. Shortly thereafter, Jamilia drove up and blocked the street with her car, so Daniels could not leave. Jamilia and Brandon believed the police would arrive soon. Brandon testified that neither he nor Jamilia had weapons while waiting for the police.

Pearlie and others saw Brandon get out of his vehicle and knock on Daniels's car while Jamilia stood a short distance away. Daniels got out of his car, and Pearlie heard the men "having words with each other." Then, Pearlie saw a knife in Daniels's hand and yelled "he's got a knife." Daniels stabbed Brandon in the arm, causing him to fall to the ground. Then Brandon yelled "run, baby, run" to Jamilia as Daniels chased her with the knife. Pearlie saw Daniels stabbing Jamilia; Brandon heard her yell, "He's stabbing her. He's stabbing her." Jamilia died quickly from her extensive and severe injuries.

After killing Jamilia, Daniel walked away carrying the knife in his hand. Brandon chased Daniels with his vehicle and struck him at low speed. Daniels managed to stand up and walked to the median of the road where the police found him holding the knife. After a thirty-minute standoff, Daniels was arrested.

Daniels testified in his defense and admitted he was the man masturbating in the video. He admitted that his conduct on the video was illegal and that he could have gone to jail if Jamilia showed it to the police. He claimed at trial that Jamilia and Brandon were armed and that he stabbed them in self-defense.

## II. SUFFICIENCY OF THE EVIDENCE

In his sole issue on appeal, Daniels argues the evidence is insufficient to support his conviction for capital murder because the evidence does not support his intent to commit the aggravating offense of retaliation. He contends that his nonretaliatory motive is clear from his testimony and the testimony of other

witnesses. Furthermore, he contends the evidence is "uncertain" or absent to show that he knew the police had been called, that he would be charged, or that Jamilia would be a witness against him in a future criminal case.

### A. Standard of Review

Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence. *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021). When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Harrell*, 620 S.W.3d at 913–14. Further, an appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight assigned to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914. An appellate court will consider all evidence when reviewing the sufficiency of the evidence, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or defense. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

### B. Applicable Law

A person commits the offense of capital murder if he intentionally commits murder in the course of or attempting to commit retaliation. *See* PENAL § 19.03(a)(2). A person commits murder if he intentionally or knowingly causes the death of an

individual. *Id.* § 19.02(b)(1). A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a person who has reported or who the actor knows intends to report the occurrence of a crime. *See id.* § 36.06(a)(1)(B).

A person acts intentionally, or with intent, when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). Direct evidence of the elements of the offense, including the identity of the perpetrator and culpable mental state, is not required. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). The jury is permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor. *Id.* 14–15. Circumstantial evidence alone may be sufficient to establish guilt. *Id.* at 15.

### C. Application of the Law to the Facts

Daniels admits that he stabbed and killed Jamilia, but contends he acted in self-defense because he thought Jamilia and Brandon were planning to kill him. However, the jury was instructed on the theory of self-defense and rejected Daniels's claim.[1]

---

[1] Although Daniels contends his actions were not in retaliation but in defense, he does not argue the evidence is insufficient to support the jury's rejection of his self-defense theory or cite to any authority relating to self-defense. And, in his prayer, he requests that we order a new trial or revise the judgment to show he is guilty of murder, not capital murder, and order a new hearing on punishment.

–6–

Daniels contends the evidence is insufficient to show he knew Jamilia's status as a person who has reported or who he knew intended to report the occurrence of a crime because Tequilla stated that she did not know or tell Daniels that Jamilia had called the police. *See* PENAL § 36.06(a)(1)(B). The record suggests otherwise. Although Tequilla claimed that she learned Jamilia had called the police from Brandon and she did not tell Daniels the police were on their way, Brandon stated that Jamilia told his mother and Tequilla that she had called the police. Further, Tequilla testified Daniels told her that he was going home to Texarkana, he took clothing to his car, and he was "acting like a man who knew the police were on their way." And, after Daniels left their apartment, she spoke with him on the phone and he told her that, if the video were to get out, he would lose his job and his life would be over, and, if Jamilia called the police, he would go to jail. From this evidence a rational jury could have inferred Daniels knew Jamilia's status as a person who has reported or who he knew intended to report the occurrence of a crime.

Further, Daniels argues that the evidence relating to his actions during the day of the murder show that he was not acting in retaliation because he was at a friendly social gathering with Jamilia and Brandon, he admitted to masturbating but stated he had not intended for Jamilia to see him, he attempted to apologize to Jamilia, and harming Jamilia would not stop the publication of the video of him masturbating. To the extent that Williams challenges the sufficiency of the evidence on the basis of conflicting inferences that may be drawn from the evidence, it is actually an attack

on the credibility and weight assigned to the evidence by the jury. We are required to defer to the jury's credibility and weight determinations. *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914.

After reviewing the evidence, we conclude that a rational jury could have found that Daniels intentionally murdered Jamilia in the course of committing or attempting to commit retaliation. Accordingly, we conclude the evidence is sufficient to support Daniels's conviction for capital murder.

Daniels's sole issue is overruled .

### III. MODIFICATION OF THE JUDGMENT

In a cross-issue, the State requests that we modify the judgment to reflect the correct offense. The State points out that the final judgment incorrectly states Daniels was convicted of capital murder by terroristic threat instead of capital murder by retaliation.

The record shows that Daniels was indicted for capital murder while in the course of committing or attempting to commit retaliation, the jury was charged on this theory of the offense, and the jury found him guilty of this offense. An appellate court has the authority to modify an incorrect judgment to make the record speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (en banc).

We conclude the trial court's final judgment should be modified as follows: "Offense for which Defendant Convicted: CAPITAL MURDER BY TERRORISTIC THREAT" is modified to read "Offense for which Defendant Convicted: CAPITAL MURDER BY RETALIATION."

The State's cross-issue is sustained.

## IV. CONCLUSION

The evidence is sufficient to support Daniels's conviction for capital murder. Also, the trial court's judgment is modified to state the correct offense.

As modified, the trial court's final judgment is affirmed.

The trial court is directed to prepare a corrected judgment that reflects the modifications made in this Court's opinion and judgment in this case. *See Shumate v State*, 649 S.W.3d 240 (Tex. App.—Dallas 2021, no pet.).

/Robert D. Burns, III//
211016f.u05                           ROBERT D. BURNS, III
Do Not Publish                        CHIEF JUSTICE
Tex. R. App. P. 47



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN DANIELS, Appellant

No. 05-21-01016-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas Trial Court Cause No. F-2100336-U. Opinion delivered by Chief Justice Burns. Justices Nowell and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Offense for which Defendant Convicted: CAPITAL MURDER BY TERRORISTIC THREAT" is modified to read "Offense for which Defendant Convicted: CAPITAL MURDER BY RETALIATION."

As **REFORMED**, the judgment is **AFFIRMED**.

We **DIRECT** the trial court to prepare a corrected judgment that reflects this modification.

Judgment entered this 15th day of June 2023.